STATE OF NORTH CAROLINA v. HARRY ALSTON, JR.

No. 52

(Filed 11 November 1977)

1. **Burglary and Unlawful Breakings § 7— first degree burglary—failure to submit lesser offenses**

    The trial court did not err in failing to instruct the jury with respect to possible verdicts of guilt of lesser offenses included within the charge of first degree burglary where the evidence for the State tended to show the commission of the offense of first degree burglary and the evidence of defendant tended to show alibi.

2. **Criminal Law § 88.2— exclusion of argumentative question**

    In a prosecution for first degree burglary and rape wherein a deputy sheriff testified that he took no physical evidence from the victim's house, the trial court properly sustained the State's objection to defense counsel's question to the deputy sheriff as to whether "your entire case is just on [the victim's] words," since (1) the question was mere argument with the witness and not designed to elicit any information not already before the jury, and (2) the case for the State also included the testimony of a medical expert and evidence with reference to the condition of clothing worn by the defendant.

3. **Criminal Law § 66.18— identification of defendant—evidence of witness's impaired vision—failure to reopen voir dire hearing**

    In this prosecution for burglary and rape, the trial court did not err in failing to reopen the voir dire examination of the victim concerning the admissibility of her testimony identifying defendant as her assailant when defendant thereafter ascertained during cross-examination of the victim before the jury that her vision was impaired by cataracts where uncontroverted evidence showed that the victim knew defendant well, the victim was confronted with and struggled with her assailant over a substantial period of time in a lighted room of her home, and no police procedure contributed to her identification of defendant, since the impairment of the victim's vision under such circumstances would relate only to the credibility of her identification and not to the admissibility of her testimony.

APPEAL by defendant from *Ervin, J.*, at the 7 February 1977 Session of MOORE.

Upon indictments, proper in form, the defendant was tried and convicted of first degree burglary and second degree rape. He was sentenced to life imprisonment for the burglary and to 16 to 20 years for the rape, the sentences to run concurrently, the court finding in each judgment that the defendant will not benefit from Article 3A of Chapter 148 of the General Statutes and,

therefore, declining to sentence him as a committed youthful offender.

Mary Lee Clark testified that she was 61 years of age, had been separated for about 20 years from her husband and lived alone in a small six room frame house in Moore County. She knew the defendant and had known him since he was a small boy. On the night of 10 December 1976, she went to bed about 7:00 p.m. Her house was locked with bars across the front and back doors and with sticks over the windows to keep them from being raised, all of the windows having glass in them. She was awakened by someone knocking on the front door but she did not get up. Later she got up, ascertained that it was 3:30 a.m., started a fire in the stove in the room where she slept and then went into another room to get her snuff box. When she returned to the first room, she bent over to see if the fire was burning and when she raised up she saw the defendant standing in the living room with his hand on the door.

The defendant objected to the identification and requested a voir dire, which was conducted in the absence of the jury. On the voir dire, Mary Lee Clark testified that she had known the defendant since he was a boy, had seen him occasionally during the preceding four or five years and that he would bring firewood to her, chop it and bring it into the house. On the night in question, when she first saw the defendant, the electric light in her bedroom was turned on and the light was shining in his face. She talked to him for 15 or 20 minutes and called him by name. She pointed to the defendant in the courtroom. She testified she had had no opportunity to see the defendant since the alleged offense, except at the preliminary hearing, and that she had never viewed a lineup or been shown photographs. When awakened by the knocking on her front door, she first thought that the person outside her house was a man named Dave McLeod, but she never said that the person who assaulted her was anyone other than the defendant.

Deputy Sheriff Thornton, the investigating officer, testified on the voir dire that he went to the residence of Mary Lee Clark on the morning of 11 December 1976, that she told him that, as she was building a fire, she saw the defendant standing in the doorway and she did not state she had seen any other man in her house that night. Deputy Thornton further testified that there

was a working electric light suspended from the ceiling of the room in which the alleged assault occurred, that he did not show Mary Lee Clark any photographs, conduct a lineup for her investigation, take her to the jail to observe the defendant or use any other identification procedures.

At the conclusion of the voir dire, the defendant having offered no evidence thereon, the court made findings of fact in accordance with the above stated evidence and concluded that the identification of the defendant by Mary Lee Clark resulted solely from her previous knowledge of him and her having observed him in a lighted room for a substantial period at the time the offenses are alleged to have occurred and, consequently, the State is entitled to offer into evidence her identification of the defendant.

The jury then returning to the courtroom, Mary Lee Clark continued to testify as follows: After she got up and before she saw the defendant, she heard the sound of something breaking but thought it was a cat outside the house among some flower pots. The light in her bedroom was on when she looked up and saw the defendant standing in the doorway with his hand up on the door. The light was shining on his face. She tried to get out the front door of the house but he put his hand around her neck. She screamed twice and the defendant said, "If you holler again, I'll kill you." The defendant then pushed her back to the davenport on which she slept. When she asked him what he wanted, he said that he wanted money and, in vulgar terms, to have intercourse. She gave him her pocketbook which contained $10.70, which he took. He then dragged her down onto the floor and, as she lay there, had intercourse with her, although she asked him not to do so and told him she was sick and too old for him. He told her to shut up. After the defendant left the house, she screamed and neighbors called the police. She was then taken to the hospital and examined by Dr. Smith. Glass had been broken out of a window in one of the other rooms of the house, the glass being found inside the house. The stick which had been placed so as to prevent the raising of the window was lying on the floor. She did not give the defendant permission to come into her house.

On cross-examination, Mary Lee Clark testified that, because of cataracts, she was blind in one eye and saw only poorly with the other eye, except when she was wearing her glasses, which she was not wearing at the time of the alleged assault. There-

upon, in the absence of the jury, counsel for the defendant requested a reopening of the voir dire with reference to the admissibility of her identification of the defendant. The court, in its discretion, declined to reopen the voir dire.

Deputy Sheriff Thornton testified, in the presence of the jury, that he answered the call to the residence of Mary Lee Clark at 5:18 a.m. on 11 December 1976. He observed broken glass inside the house and that a plastic covering on the outside of the window had been cut.

Lieutenant Ritter of the Sheriff's Department testified that he arrested the defendant at the latter's residence and identified as the State's Exhibit No. 3 trousers worn by the defendant that morning after his arrest, these being taken from the defendant following his being advised of his rights. These trousers were examined by a serologist employed by the State Bureau of Investigation who found blood on the fly of the pants.

Dr. Smith, an expert gynecologist, testified that, on the morning of 11 December 1976, he examined Mary Lee Clark and found bruises, a deep abrasion and slight bleeding of the vagina.

The defendant testified in his own behalf, his defense being alibi. According to his testimony, he was at the home of his aunt from 7:00 p.m. until 1:45 a.m. on the night of December 10-11 and, from his aunt's house, went straight home, arriving there at about 2:05 a.m. and then went to bed, where he remained until awakened when the officers arrived at approximately 9:00 a.m. This alibi was supported by the testimony of his father and sister.

The defendant and his sister further testified that the trousers which he put on when he was so awakened, and which were taken from him following his arrest and introduced in evidence as the State's Exhibit No. 3, belonged to his sister, he frequently wearing her trousers, and that these were not the trousers worn by him the evening before. The defendant denied going to the home of Mary Lee Clark, breaking into it, taking money from her, threatening her or raping her. The defendant's sister testified that she did not know how the blood got upon the fly of the trousers, it not being thereon the last time she had seen the trousers.

In rebuttal, the State offered in evidence a pair of undershorts worn by the defendant at the time of his arrest and taken

from him along with the above mentioned trousers. A small bloodstain was on the front of this garment near the opening. The defendant had previously testified that he was wearing this garment the evening before and slept in it the night before his arrest.

*Rufus L. Edmisten, Attorney General, by Isaac T. Avery III, Associate Attorney, for the State.*

*John B. Evans for the defendant appellant.*

LAKE, Justice.

[1] The defendant does not except to any portion of the court's charge to the jury. We have, however, carefully examined the court's instructions and find no error therein. In his statement of the case on appeal, the defendant did assign as error the failure of the court to instruct the jury with respect to possible verdicts of guilt of lesser offenses included within the charge of first degree burglary, but no argument is made or authority cited with reference to this assignment of error in the defendant's brief. It is, therefore, deemed abandoned. Rule 28(a) of the Rules of Appellate Procedure, 287 N.C. 671, 741. In any event, this assignment of error is without merit. There was no evidence of a lesser offense included within the offense of first degree burglary, the evidence for the State showing the commission of the offense charged in the bill of indictment and the evidence of the defendant tending to establish an alibi. Where there is no evidence which would support a verdict of guilty of a lesser included offense, it is not error to fail to instruct the jury upon such offenses or to fail to submit these as possible verdicts. *State v. Harvey,* 281 N.C. 1, 12, 187 S.E. 2d 706 (1972); *State v. Griffin,* 280 N.C. 142, 185 S.E. 2d 149 (1971); Strong, N.C. Index 3d, Criminal Law, § 115.

[2] On cross-examination, Deputy Sheriff Thornton stated that he took no physical evidence from the residence of Mary Lee Clark, such as fingerprints, clothing or blood samples. Thereupon, defendant's counsel asked the witness, "Then eventually, Deputy Thornton, your entire case is just on Mrs. Clark's words * * *." The State objected and the objection was sustained. In this there was no error. While the record indicates the defendant's question was not completed, his assignment of error is not based on that

circumstance so we conclude that the question was, in fact, complete. The objection was properly sustained for the reason that this question was, in reality, mere argument with the witness and not designed to elicit any information not already before the jury. Moreover, the record does not disclose what the answer of the witness would have been. See, Stansbury, North Carolina Evidence (Brandis Rev.), § 26. Furthermore, while the deputy may have relied entirely upon Mary Lee Clark's statements, the case for the State also includes the testimony of Dr. Smith and the evidence with reference to the condition of clothing worn by the defendant.

[3] The principal contention of the defendant on appeal is that the court erred in failing to reopen the voir dire examination of Mary Lee Clark concerning the admissibility of her testimony identifying the defendant as her assailant. The basis for this contention is that, after the voir dire was concluded, upon cross-examination of this witness the defendant ascertained that her vision was impaired by cataracts. This would relate only to the credibility of her identification, not to the admissibility of her testimony, there being no indication whatsoever of any police procedures, proper or improper, contributing to her identification of the defendant. Her testimony, not controverted by the defendant, was that she knew the defendant well and had known him practically all of his life. On the occasion in question, she was confronted by and struggled with her assailant over a substantial period of time in a lighted room in her own home. Under these circumstances, there was no occasion for the court to conduct any further voir dire examination with reference to the admissibility of the in-court identification of the defendant by this witness. *State v. Cox, Ward and Gary*, 281 N.C. 275, 282, 188 S.E. 2d 356 (1972); *State v. Richardson*, 279 N.C. 621, 626, 185 S.E. 2d 102 (1971). *State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), relied upon by the defendant, has no application to the circumstances of the present case.

The conflict between the testimony of Mary Lee Clark positively identifying the defendant as the burglar and her assailant, and the testimony of the defendant, designed to establish an alibi, simply presented a question of credibility for the jury, which resolved it contrary to the defendant's contention.

No error.