STATE OF NORTH CAROLINA v. GERALD DERMONT CONRAD

No. 100

(Filed 15 December 1977)

**Kidnapping § 1.2— confinement for purpose of terrorizing—insufficiency of evidence**

Evidence was insufficient for the jury in a prosecution for kidnapping where the State contended that defendant, by threats and deception, confined the prosecuting witness for the purpose of terrorizing her and thereby forcing her to commit prostitution, but testimony by the prosecuting witness indicated that at no time was there any display of force to cause the witness to remain with defendant; the only physical contact between the witness and defendant was when he attempted to seduce her and, upon her refusal, immediately desisted; the witness was allowed to go shopping with other girls in defendant's employ, unaccompanied by defendant; the witness at all times had money in her possession which could have been used to escape; the witness was allowed to go horseback riding with another girl at a location forty-five to fifty-five minutes' drive from the motel where she practiced prostitution; the witness went to a poker game approximately one hour's drive from the motel with one of defendant's friends where she made $86 in tip money and later spent the night at the friend's house because he was unable to drive; and the witness was experienced in worldly affairs far beyond her years.

WE allowed petition for discretionary review of the decision of the Court of Appeals, 33 N.C. App. 638, 235 S.E. 2d 799 (1977), (Arnold, J., concurred in by Britt and Vaughn, JJ.), which found no error in judgment of *Ferrell, J.*, 13 August 1976 Session, DAVIDSON County Superior Court.

Defendant was indicted and convicted of kidnapping under G.S. 14-39(a)(3) which reads, in pertinent part, as follows:

"Any person who shall confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(3) Doing serious bodily injury to or terrorizing the person so confined, restrained or removed or any other person."

Upon his conviction, defendant was sentenced to twenty-five years imprisonment. It also appears that defendant later entered a plea of guilty to operating a house of prostitution, for which he received and served a sixty-day sentence.

The State's evidence tended to show the following:

The prosecuting witness, Mildred Nannette Wayne, age 17, was a native of St. Louis, Missouri. On 1 May 1976, she left her home in St. Louis and went to Detroit, Michigan, where she stayed with a friend for three days. Mildred had run away from home on prior occasions, once to California to see the manager of a rock group. On 3 May 1976, Mildred left Detroit alone hitchhiking south, headed for Daytona Beach, Florida. After catching several rides with truck drivers, she arrived at Bill's Truck Stop near Lexington, North Carolina, on Thursday, 6 May 1976. At this time, she had changed her mind about going to Florida and had decided to go home and straighten things out with her parents.

After purchasing some cigarettes at Bill's Truck Stop, the prosecuting witness went over to the Shangri-La Motel nearby to get a room for the night. She had approximately $90.00 at this time which she had brought with her from Detroit. After dinner, Mildred contacted the manager of the motel because there was no hot water in her room. Defendant and another man came to her room and fixed the water. Following some preliminary conversation, defendant suggested that Mildred work for him as a prostitute in order to make some money. She accepted this proposal after a few minutes thought, but agreed to do it only for the weekend. For the next ten days, the prosecuting witness stayed at the Shangri-La and much of the time engaged in prostitution under defendant's supervision. During this period she twice went shopping with other girls in defendant's employ and on one occasion went horseback riding with one of the girls at a location some forty-five to fifty-five minutes' drive from the motel. In addition, on Sunday night, May 9, Mildred went to a poker game with one of defendant's friends where she had several customers and made some $86.00 in tip money.

On 16 May 1976, Mildred left the Shangri-La and called the Sheriff's Department from Bill's Truck Stop. An officer arrived seven minutes later and she left with him.

Other facts pertinent to the decision are related in the opinion.

*Cahoon & Swisher, by Robert S. Cahoon, for defendant-appellant.*

*Rufus L. Edmisten, Attorney General, by Associate Attorney Nonnie F. Midgette, for the State.*

COPELAND, Justice.

Defendant assigns many errors, among them the denial of his motion for nonsuit. For reasons hereinafter indicated, we conclude that the failure to grant nonsuit for defendant was error and reverse the decision of the Court of Appeals.

In considering a motion for nonsuit, the court must view the evidence in the light most favorable to the State. *State v. White*, 293 N.C. 91, 235 S.E. 2d 55 (1977). There must be sufficient evidence to provide a reasonable basis for the jury to find that (1) the crime charged was in fact committed, (2) by the person charged. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). Evidence which merely raises surmise or conjecture of guilt is insufficient to withstand nonsuit. *State v. Minor*, 290 N.C. 68, 224 S.E. 2d 180 (1976).

Prior to its amendment in 1975, G.S. 14-39 contained no definition of the crime of kidnapping. Under the common law definition as set out by our Court, it was essential that the victim be taken and carried away to some other place. *State v. Roberts*, 286 N.C. 265, 210 S.E. 2d 396 (1974); *State v. Dix*, 282 N.C. 490, 193 S.E. 2d 897 (1973). The 1975 General Assembly rewrote the statute to include *confinement* or *restraint* for certain specified purposes in the definition of the crime, thereby eliminating the asportation requirement.

In the instant case, the State contends that defendant, by threats and deception, confined the prosecuting witness for the purpose of terrorizing her and thereby forcing her to commit prostitution. We note that the State's case hinged on proof of confinement for the purpose of terrorizing the alleged victim, since prostitution is a midemeanor and therefore not within G.S. 14-39(a)(2) which proscribes confinement, restraint or removal for the purpose of facilitating the commission of a felony. In instructing the jury, the trial court defined "terrorize" as "to intentionally threaten, intimidate or appeal to the fears of another sufficient to place an ordinarily prudent person in fear for his life or per-

sonal safety." The word has further been defined, as it related to a statute prohibiting the making of "terroristic threats", as "to reduce to terror by violence or threats, and terror means an extreme fear or fear that agitates body and mind." *State v. Gunzelman*, 210 Kan. 481, 486, 502 P. 2d 705, 710 (1972).

The primary evidence relied on by the State as proof that defendant confined the prosecuting witness for the purpose of terrorizing her is as follows: On several occasions defendant shouted at her to stay in her room. Defendant told the prosecuting witness that the local law enforcement officials were his friends. In one instance, defendant told her to sit in a chair in his room. During this time he looked at a gun and billy club on the wall, although he never made any threat to use either of the weapons. Defendant remarked at another time that girls who did not make money got killed. Defendant also shouted at the witness for leaving her room, saying that if she wanted to get killed he could take care of it.

This evidence alone might well be sufficient to withstand a motion for nonsuit. In view of the remainder of the testimony of the prosecuting witness however, we find that a reasonable inference of defendant's guilt could not be drawn.

The primary factors which rebut any inference in favor of the State are: (1) At no time was there any display of force to cause Mildred to remain with defendant. (2) The only physical contact between the prosecuting witness and defendant was when he attempted to seduce her and, upon her refusal, immediately desisted. (3) The witness was allowed to go shopping with other girls in defendant's employ, unaccompanied by defendant. (4) She at all times had money in her possession which could have been used to escape. (5) She was allowed to go horseback riding with one of the girls at a location forty-five to fifty-five minutes' drive from the motel. (6) The witness went to a poker game approximately one hour's drive from the motel with one of defendant's friends, where she made $86.00 in tip money and later spent the night at the friend's house because he was unable to drive. (7) The prosecuting witness was experienced in worldly affairs far beyond her years.

While it is elementary that conflicts in the evidence must be resolved in favor of the State in ruling on a motion for judgment

of nonsuit, *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied*, 414 U.S. 874 (1973), the unconflicting testimony of the prosecuting witness here completely belies any assertion that she was in fact confined against her will for the purpose of terrorizing her. Mildred appears to have been permitted to roam in an unfenced pasture, with little or no confinement or restraint. Although we find the alleged actions of defendant abhorrent, it is our conclusion that they present insufficient evidence to submit a kidnapping charge to the jury; therefore, the judgment and decision appealed from are

Reversed.