STATE OF NORTH CAROLINA v. JASPER LEE DREW HARDY

No. 6

(Filed 5 March 1980)

1. **Burglary and Unlawful Breakings § 5; Rape § 5—first degree burglary—rape —sufficiency of evidence**

     Evidence in a prosecution for rape and burglary was sufficient to be submitted to the jury where it tended to show that the victim observed her assailant face to face under lighted conditions and identified defendant at trial as the man who broke into her home and raped her; the town chief of police observed defendant running down the street on which the victim lived around the time the crimes were committed; defendant's body hairs "matched favorably" those found at the crime scene; defendant confessed to police that he committed the crimes; some of the items stolen from the victim's home were found in defendant's possession when he was arrested; and before defendant was arrested he attempted to flee from the police.

2. **Constitutional Law § 45— defendant's dismissal of counsel—attorney appointed stand-by counsel—right to counsel not abridged**

     The trial judge did not err in permitting defendant's counsel to withdraw upon defendant's motion, and defendant was not denied his Sixth Amendment right to effective assistance of counsel where defendant stated that he wished to dismiss his counsel because he was dissatisfied with his services; the trial judge advised defendant that he had a right to dismiss his attorney and to conduct his own trial without counsel but that the trial would nevertheless proceed; defendant intelligently, voluntarily and knowingly dismissed his counsel and elected, despite admonitions from the trial judge not to do so, to proceed to trial without counsel; the trial judge then appointed defendant's lawyer as stand-by defense counsel; and defendant thereafter conferred with the lawyer a number of times in his capacity as stand-by counsel.

3. **Constitutional Law § 30— hearing to determine probable cause for arrest or search—confidential informant—no right to learn identity**

     Neither the Sixth Amendment right to counsel nor the Fourteenth Amendment right to due process entitles the defendant to learn the identity of a confidential informant at a preliminary stage held to determine if there is probable cause for an arrest or search.

4. **Criminal Law § 102.11— jury argument—defendant's innocence—no prejudice**

     Defendant was not prejudiced by the private prosecutor's statement during closing argument, "Can the defendant, based on this evidence, show you a valid conclusion of his innocence?" since no objection was made when the statement was made to the jury, and since any error was cured by the judge when he instructed the jury during his charge at the close of the final arguments that the jury was to understand and apply the law as the judge gave it to them, and he then immediately, completely and accurately instructed regarding the presumption of defendant's innocence.

**5. Criminal Law § 102.6— jury argument—reasonable doubt—no prejudice**

Defendant was not prejudiced by the remark of State's counsel during her closing argument concerning " 'beyond' [being] an unnecessary appendage to the words 'reasonable doubt'," since State's counsel was not thereby expressing an opinion about defendant's guilt, and the trial judge, during his charge at the close of final arguments, correctly instructed on the State's burden of proof.

**6. Criminal Law § 75— admissibility of confession**

Defendant's confession was voluntary and the trial court properly denied defendant's motion to suppress where the evidence tended to show that defendant was given the *Miranda* warnings; defendant executed a written waiver of his right to remain silent; and the police did not improperly induce defendant's confession by threats or other means, nor was defendant under the influence of any drugs at the time of the confession.

**7. Searches and Seizures § 8— warrantless arrest—search incident to arrest proper**

Defendant's warrantless arrest was proper where a police officer had probable cause to make the arrest, and a warrantless search of defendant's person made incident to the arrest was proper.

**8. Arrest and Bail § 3.1— probable cause—no effect of dismissal of another charge**

There was no merit to defendant's contention that the State was collaterally estopped from establishing that there was probable cause to arrest him for burglary and rape because his motion to dismiss a charge of assault on an officer that arose when he was arrested on the burglary and rape charges was granted at the close of the State's evidence on the assault charge in district court.

**9. Burglary and Unlawful Breakings § 7— first degree burglary—no instruction on lesser included offense—no error**

The trial court in a first degree burglary case did not err in refusing to instruct on the lesser included offense of misdemeanor breaking and entering.

**10. Criminal Law § 116— defendant's failure to testify—instruction absent request—no prejudice**

Since defendant did not request an instruction on his failure to testify, it would have been better for the court to make no reference to his silence, but the court's instruction in this case that defendant's failure to testify created no presumption against him and that defendant's silence was not to influence the jury's decision either way was not prejudicial to defendant.

ON appeal by defendant from *Allsbrook, J.* at the 12 February 1979 Session of PITT County Superior Court.

Defendant was charged in indictments, proper in form, with second degree rape and first degree burglary.

The State's evidence tended to show that Mrs. Carolyn Jackson, age 52, was awakened in her home on Pitt Street in Grimesland between 1:00 and 2:00 a.m. by a loud scratching noise outside her home. She went to her telephone and discovered that it was not working. She shined her flashlight into the yard and discovered a man crouched down beside her car. She screamed and the man moved to the front of the house. She went to the back of the house and when she got there a black, bearded man, later identified as the defendant, burst through the wooden door. She struck him with her flashlight and screamed again. He beat her until she assured him she would not scream anymore. He took her to the den, forced her down on the floor, took a drapery and wrapped it around her face, pinned her arms to her side and raped her. He then got up and went to look for the victim's purse. She hid in the bedroom. The defendant entered that room and turned on the light. He then forced her down on the bed, covered her face with a sheet and raped her again. He left after receiving assurances from her that she would not report the incident to the police. When defendant left, she immediately ran down the street to a trailer where a policeman lived but no one was at home. She then proceeded to the house of her sister-in-law, reported the events to her and the police were notified. The Chief of Police of Grimesland was on patrol that evening. At approximately 1:40 a.m. he saw a black man running down Pitt Street. He turned his car around at the next intersection, but was then unable to locate the person he had seen running. At trial, he identified the defendant as the man he had seen on Pitt Street that evening. The victim described her assailant to an SBI agent and a composite drawing was made.

Two days later, two deputy sheriffs of Pitt County went to the home of defendant's grandmother looking for the defendant. Defendant was there. He climbed out of a window but was caught by Deputy Sheriff Moye who placed him under arrest. At trial, the victim positively identified the defendant as the man who broke into her home and raped her.

Hair samples were taken from the defendant's body. Hairs were also taken from the bed where the second rape occurred. An FBI agent testified that the hairs found on the bedsheet "microscopically matched the known pubic hair samples of Jasper Hardy." The agent testified on cross-examination that "science has

not reached the point where I can say positively that a hair came from a certain person." However, the hairs found at the scene of the rape "matched up favorably" with the hair samples taken from defendant's body.

The defendant offered no evidence in his behalf.

The jury found the defendant guilty as charged. He was given two life sentences. The second sentence is to run concurrently with the first. Defendant has appealed from both convictions and sentences.

Additional facts pertinent to the decision are related in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Marvin Schiller for the State.*

*Thomas F. Taft and Paul de Vendel Davis for the defendant.*

COPELAND, Justice.

For the reasons stated below, we have determined that the defendant received a fair trial free from prejudicial error.

[1] Defendant argues that the State's evidence was not sufficient to take the case to the jury and thus, his motions to dismiss, made at the close of the State's evidence and at the close of all the evidence, should have been granted. We believe that the evidence clearly reveals that these motions were properly denied.

On a motion to dismiss for insufficient evidence, the court must find that there is substantial evidence both that the offense charged has been committed and that defendant committed it, before it can overrule the motions. *State v. Conrad,* 293 N.C. 735, 239 S.E. 2d 260 (1977). Upon such a motion, the evidence is to be considered in the light most favorable to the State and the State is to be given the benefit of every reasonable inference deducible therefrom. *State v. Hayes,* 291 N.C. 293, 230 S.E. 2d 146 (1976).

The victim observed the defendant face to face under lighted conditions and identified the defendant at trial as the man who broke into her home and raped her. The Chief of Police of Grimesland observed the defendant running down the street on which the victim lived around the time the crimes were com-

mitted. The defendant's body hairs "matched favorably" those found at the crime scene. The defendant confessed to the police that he committed the crimes. Some of the items stolen from the victim's home were found in the defendant's possession when he was arrested. Before the defendant was arrested he attempted to flee from the police.

The defendant contends that the State failed to present substantial evidence regarding his *intent* to commit rape and burglary.

In this connection, we note that intent is seldom provable by direct evidence and ordinarily must be proved by circumstances from which it may be inferred. *State v. Bell,* 285 N.C. 746, 208 S.E. 2d 506 (1974). We believe that a rational trier of the facts could find from the evidence presented that the defendant possessed the criminal intent to commit the burglary and rape. *See, State v. Sweezy,* 291 N.C. 366, 230 S.E. 2d 524 (1976). These assignments of error, being without merit, are overruled.

[2] Defendant contends that the trial judge erred in permitting defendant's counsel to withdraw upon defendant's motion, and that in so doing the defendant was denied his Sixth Amendment right to effective assistance of counsel.

Defendant was found to be indigent and an attorney was appointed to represent him    However, defendant's mother then privately retained Mr. Jerry Paul as defense counsel. Mr. Paul served as defense counsel until the tenth day of the trial. On that day, defense counsel indicated to the court that the defendant was considering entering a plea of guilty to both charges. The plea bargain was to be that he would get not less than twenty nor more than sixty years in each case and that the sentences would run concurrently. He was also to receive psychiatric evaluation from the prison authorities. The plea was typed and defense counsel conferred with his client outside the courtroom. Apparently, after lengthy conferences, Mr. Paul stated to the court, upon inquiry, that it appeared the trial would continue. A few moments later, the defendant stated that he wished to dismiss his privately retained counsel because he was dissatisfied with his services.

The trial judge advised the defendant of the seriousness of the offenses of which he was charged and of the maximum punishment for each. He then stated to the defendant that,

"Now, I don't think I have the right to deny your motion to relieve Mr. Paul as your attorney since you privately employed him because you are allowed under the law, if you do this freely and voluntarily and knowingly, you can proceed without the assistance of counsel after certain things have taken place.

First of all, I want you to understand that you have a right to be represented by an attorney. And you already have properly employed an attorney, Mr. Paul, who has investigated this matter and who has been representing you for the past ten days and as I said to you in open court, I think Mr. Paul has been representing you well. If, however, you decide to proceed without Mr. Paul as your attorney — and I assume, Mr. Paul you are here and you have been employed, and, of course, you are prepared to see this trial through?"

Mr. Paul replied,

"I am prepared to see it through, Judge. I have been representing him since November and I have done everything requested of me."

Judge Allsbrook advised the defendant as follows:

". . . I think you would be making a very serious mistake to attempt to discharge your attorney at this point and handle this matter on your own. Because we are going forward with the trial. And Mr. Paul has indicated that he is willing to continue representing you to the best of his ability. Now, an attorney, in the course of a trial will make certain recommendations to a client. And, of course, I gather that is what has prompted — that what has prompted this [dismissal of defense counsel] is the fact that perhaps some recommendation may have been made to you regarding his professional opinion as to perhaps what would be in your best interest. However, I am sure that is a decision that Mr. Paul is leaving up to you and is willing to abide by whatever decision you want to make along that line. Am I correct, Mr. Paul?"

Mr. Paul replied that he was willing to abide by the defendant's decision.

After further admonitions from the court, Judge Allsbrook again inquired of defendant,

"Now, Mr. Hardy, my question to you is do you still want to discharge Mr. Paul as your attorney and go in and continue the trial of these serious felonies without an attorney."

Mr. Hardy replied,

"I discharged him. I am dissatisfied with a few issues. I would rather him not even represent me."

The trial judge then appointed Mr. Paul as stand-by counsel to assist Mr. Hardy when called upon, and to bring to the court's attention matters favorable to the defendant upon which the court would rule. He further advised counsel to consult with Mr. Hardy the best he could and to be available to answer any questions that defendant might have.

After further conversation, the defendant stated that, "I do not want him [Paul] to say anything in my behalf." The court also advised Mr. Paul that it would be his duty to advise the court about anything that he thought should be brought to the court's attention in the defendant's behalf.

From the above, we believe that the record clearly discloses that the defendant intelligently, voluntarily and knowingly dismissed Mr. Paul as his attorney and elected, despite admonitions from the trial judge not to do so, to proceed with the trial without counsel. In addition, the trial judge properly appointed Mr. Paul as stand-by defense counsel. After this, defendant conferred with Mr. Paul on a number of occasions in his capacity as stand-by counsel. Defendant even asked Mr. Paul to "sit-in" during a recess period in which the decision to call defense witnesses would be considered. The United States Supreme Court held in *Faretta v. California*, 422 U.S. 806, 45 L.Ed. 2d 562, 95 S.Ct. 2525 (1975), that a defendant has the right under the Sixth Amendment to conduct his own defense and to proceed without counsel when he voluntarily and intelligently elects to do so. We held in *State v. McNeil*, 263 N.C. 260, 139 S.E. 2d 667 (1965), that, "[t]he United States Constitution does not deny to a defendant the right to

defend himself. Nor does the constitutional right to assistance of counsel justify forcing counsel upon a defendant in a criminal action who wants none." *Id.* at 267-68, 139 S.E. 2d at 672.

Therefore, the trial judge was correct in advising the defendant that he had a right to dismiss his attorney and conduct his own trial without counsel but that the trial would nevertheless proceed. *Faretta v. California, supra; State v. McNeil, supra; State v. Beeson,* 292 N.C. 602, 234 S.E. 2d 595 (1977); *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652, *death sentence vacated,* 409 U.S. 1004 (1972). This assignment of error is overruled.

Defendant maintains that the trial court erred in refusing to allow defendant's attorney to pursue his cross-examination of a deputy sheriff during a pretrial *voir dire* hearing held to determine if there was probable cause to arrest the defendant. Defendant wanted to learn the identity of a confidential informant and he contends that the trial judge acted in violation of G.S. 15A-978 in sustaining the State's objections to the questioning of the deputy sheriff in this regard. The contention of the defendant is misguided. The cited statute concerns "the validity of a *search warrant* and the admissibility of evidence obtained thereunder by contesting the *truthfulness* of the testimony showing probable cause for its issuance." G.S. 15A-978(a). [Emphasis added.]

[3] Here, we are concerned with the defendant's contention that he wished evidence suppressed because there was an illegal arrest. The statute dealing with probable cause to arrest is G.S. 15A-401. Neither the Sixth Amendment right to counsel nor the Fourteenth Amendment right to due process entitles the defendant to learn the identity of a confidential informant at a preliminary stage held to determine if there is probable cause for an arrest or search. *McCray v. Illinois,* 386 U.S. 300, 18 L.Ed. 2d 62, 87 S.Ct. 1056, *rehearing denied,* 386 U.S. 1042 (1967).

The relevant evidence presented at the *voir dire* showed that Deputy Sheriff Moye had been to the home of the victim and had made a thorough investigation. The victim told him what had occurred and she described her assailant and what he was wearing. At the request of Deputy Sheriff Moye, an SBI agent prepared a composite drawing, which was offered into evidence in this case. The trial judge found at the hearing that this drawing portrayed a similar likeness of the defendant. Later Deputy Sheriff Moye

showed this composite drawing to the Chief of Police of Grimesland who identified the picture as being that of the man he saw running down the street on which the victim lived on the night of the crime.

In addition, Deputy Sheriff Moye had a talk with a confidential reliable informant who looked at the composite picture and identified it as that of "Bro" Hardy, which was a name that the defendant went by. It was further determined that the defendant had shaved off his beard on the next day after the crime was committed. Other facts were known by Deputy Sheriff Moye at the time of the arrest pertaining to the background, family, and employment of the defendant. This evidence reveals that the police had probable cause to arrest the defendant for burglary and rape. The trial judge made proper findings of fact and conclusions of law at this *voir dire* hearing. This assignment of error is overruled.

[4] The defendant contends that the trial judge erred in permitting privately employed counsel for the prosecution to make improper and prejudicial remarks during her closing argument to the jury. At one point in the closing argument, the private prosecutor stated, "Can the defendant, based on this evidence, show you a valid conclusion of his innocence?" (At this time counsel was proceeding on the theory that the defendant planned to make a closing argument to the jury. This he later declined to do.) No objection was made when this statement was made to the jury. Ordinarily, objection to an improper argument by State's counsel must be made before the verdict so that the trial judge may be given a chance to stop the argument and instruct the jury to disregard the prejudicial matter. *State v. Smith*, 294 N.C. 365, 241 S.E. 2d 674 (1978). Arguments of counsel are largely in the control and the discretion of the trial judge. We do not review the exercise of the trial judge's discretion in controlling jury arguments unless the impropriety of counsel's remarks is extreme and is clearly calculated to prejudice the jury in its deliberations. *State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976).

We do not believe that the error in this remark by State's counsel was so extreme or clearly calculated to prejudice the jury so that the trial judge should have *ex mero motu* instructed the jury to disregard the remark. Whatever error there may have

been, it was cured when the trial judge instructed the jury during his charge at the close of the final arguments that the jury was to understand and apply the law as the judge gave it to them. He then immediately, completely and accurately instructed the jury regarding the defendant's presumption of innocence.

[5] Defendant also complains that he was prejudiced by the remark of State's counsel during her closing argument that,

"[T]he defendant's counsel emphasized the word 'beyond' as if the State has to go beyond the horizon into the ends of the earth to prove the defendant guilty. That concept is just not accurate. *The word 'beyond' is an unnecessary appendage to the words 'reasonable doubt.'* It is not necessary to prove more than a reasonable doubt or to prove further than a reasonable doubt.

If you do not have a reasonable doubt of this defendant's guilt, convict. If you do have a reasonable doubt, acquit. That is the best way I know to explain it . . . . You will shortly be hearing Judge Allsbrook instruct you on reasonable doubt. That it is a common sense doubt based on reason. It is not just a mere possibility, an imaginary doubt.

. . .

And based on the evidence . . . there is no reasonable doubt in this case." [Emphasis added.]

Counsel is entitled to argue to the jury the law, the facts, and all inferences reasonably deducible therefrom. *State v. Taylor, supra.* Considered in context, the import of this portion of the argument on the law is clear although the underlined portion considered in isolation is a confusing and poor statement. We do not believe that the error was so extreme or clearly calculated to prejudice the jury so as to require, *ex mero motu,* an instruction from the trial judge at this point in the closing argument. Nor do we find that State's counsel was expressing an opinion about defendant's guilt to the jury. Again, the trial judge instructed the jury during his charge to understand and apply the law as he gave it to them. He correctly instructed the jury on the State's burden of proof. We have carefully reviewed the closing argument of State's counsel and we find no prejudicial error. These assignments of error are overruled.

[6] Defendant contends that his confession was involuntary and therefore, it was error for the trial judge to deny his motion to suppress the confession. At the conclusion of the *voir dire* hearing held on this motion, the trial judge made findings of fact and conclusions of law to the contrary. The trial judge found that the defendant was given all the *Miranda* warnings and that he answered all the *Miranda* questions affirmatively except that he did not wish counsel present. The trial judge found that Officer Moye, the arresting officer, secured a written waiver of defendant's right to *silence*. The trial judge found that the police did not improperly induce the confession by threats or other means and that the defendant was not under the influence of any drugs at the time of the confession. The record supports these findings and the conclusion that the confession could be received into evidence. This assignment of error is without merit and is overruled.

[7] The defendant asserts that the trial judge erred in denying his motion to suppress the evidence obtained as a result of the search made pursuant to the warrantless arrest. Defendant argues that there was no probable cause to make the arrest, that a warrantless arrest was improper, and that the search pursuant to the arrest was illegal. We have already held that the police had probable cause to make the arrest. We hold that no arrest warrant was required. *United States v. Watson,* 423 U.S. 411, 46 L.Ed. 2d 598, 96 S.Ct. 820, *rehearing denied,* 424 U.S. 979 (1976). Our statute regarding arrest by an officer *without a warrant* provides in relevant part that, "Offense Out of Presence of Officer—An officer may arrest without a warrant any person who the officer has probable cause to believe: a. Has committed a felony." G.S. 15A-401(b)(2). This statute does not require a warrant where one has not been required by the United States Supreme Court in *Watson.*

A search without a search warrant may be made incident to a lawful arrest; however, the scope of the search is limited to the arrestee's person and the area within his immediate control. *Chimel v. California,* 395 U.S. 752, 23 L.Ed. 2d 685, 89 S.Ct. 2034, *rehearing denied,* 396 U.S. 869 (1969). Here, defendant's person was searched and incriminating evidence obtained (property that the victim told police was missing from her house after the break-in). This search did not exceed the limits of *Chimel.* This assignment of error is overruled.

[8]   The defendant argues that the State was collaterally estopped from establishing that there was probable cause to arrest him for burglary and rape because his motion to dismiss a charge of assault on an officer that arose when he was arrested on the burglary and rape charges was granted at the close of the State's evidence on the assault charge in District Court.

This contention is devoid of merit. A defendant may be charged with severeal offenses arising out of a certain transaction or occurrence but when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe v. Swenson*, 397 U.S. 436, 25 L.Ed. 2d 469, 90 S.Ct. 1189 (1970). Here, defendant's motion to dismiss the assault charge in District Court was granted at the close of the State's evidence which means that not enough evidence from which the trier of fact could convict the defendant of assault was presented at trial. It does not mean that there was no probable cause to charge the defendant with assault and even if it did, that has nothing to do with probable cause to arrest him for burglary and rape. Those two charges are felonies and are within the original jurisdiction of the Superior Court. The District Court case had nothing to do with the burglary and rape charges. Thus, there was no judgment in that case affecting the ultimate issues in this case. This assignment of error is overruled.

[9]   The defendant maintains that the trial judge erred with respect to the burglary charge by refusing to instruct on the lesser included offense of misdemeanor breaking and entering. However, when the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of a lesser included offense, it is not error for the trial judge to refuse to instruct on the lesser offense. *State v. Alston*, 293 N.C. 553, 238 S.E. 2d 505 (1977). Here, the State's evidence was clear and positive with respect to establishing that the defendant broke and entered an occupied dwelling in the nighttime with the intent to commit a felony. Therefore, with respect to this offense, he was either guilty or not guilty of first degree burglary. It was not error for the trial judge to refuse to instruct on any lesser included offense for first degree burglary. This assignment of error is overruled.

**[10]** Finally, defendant argues that the trial judge erred in charging the jury regarding the defendant's Fifth Amendment right to silence since the defendant did not testify. The trial judge instructed the jury that the defendant's failure to testify created no presumptions against him because the law gives him that privilege. The jury was instructed that the defendant's silence was not to influence their decision either way. The defendant did not request this instruction. When asked by the trial judge whether or not he wanted an instruction on this point, the defendant replied, "I don't have any answer." The trial judge then inquired, "So you have no position either way?" The defendant replied, "No." The trial judge then stated that, "Since you don't object to it, I'm going to charge the jury."

We find no prejudicial error in the charge. However, we shall once again reiterate that when the defendant does not request that the instruction be given, then, in the absence of a request, it is better for the trial judge to make no reference to the defendant's failure to testify. *State v. Cawthorne,* 290 N.C. 639, 227 S.E. 2d 528 (1976).

We commend Judge Allsbrook for the able and patient manner in which this most difficult trial was conducted.

We believe the defendant has had a fair trial free from prejudicial error and we find

No error.