IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-44

Filed: 7 January 2020

Duplin County, Nos. 15 CRS 52497, 17 CRS 111

STATE OF NORTH CAROLINA,

v.

DIANNA MICHELLE CARTER, Defendant.

Appeal by Defendant from judgments entered 1 February 2018 by Judge Joshua W. Willey, Jr., in Duplin County Superior Court. Heard in the Court of Appeals 17 September 2019.

> *Attorney General Joshua H. Stein, by Deputy General Counsel Blake W. Thomas and Duplin County Assistant District Attorney Michele-Ellen Morton, for the State-Appellee.*
>
> *Kimberly P. Hoppin for Defendant-Appellant.*

COLLINS, Judge.

Defendant Dianna Michelle Carter appeals from judgments entered upon jury verdicts of guilty of financial card fraud, obtaining property by false pretenses, identity theft, and attaining habitual felon status. On appeal, Defendant argues that the trial court erred by denying her motion to dismiss the charges of identity theft for insufficient evidence and by instructing the jury on false or conflicting statements. We discern no error.

## I. Procedural History

A jury found Defendant guilty in July 2017 of financial card fraud, obtaining property by false pretenses, identity theft, and attaining the status of habitual felon.[1] The trial court entered judgments upon the jury's verdicts on 1 February 2018, sentencing Defendant to consecutive prison terms of 133 to 172 months and 96 to 128 months. Defendant gave oral notice of appeal in court.

## II. Factual Background

The State's evidence at trial tended to show: On 29 August 2015, Corporal Jerry Wood of the Wallace Police Department received a phone call from the regional manager of Aaron's Rental ("Aaron's"), reporting suspected fraud by Defendant. Aaron's had been charged back for four credit card transactions wherein Defendant provided payment to Aaron's by credit card over the phone, and payment to the credit card companies was subsequently refused by the credit card holders. Wood learned in telephone interviews with the regional manager and the sales manager that Defendant called Aaron's on 8 June 2015 and 7 July 2015 to make payments on her own account at Aaron's, and on her daughter's account. Each time, Defendant identified herself as Dianna Carter and gave the sales manager a credit card number, expiration date, and security code for payment. The sales manager recognized

---

[1] The charges were brought in two file numbers: 15 CRS 52497 (included four counts of identity theft involving the use of credit card information of two victims) and 17 CRS 111 (included two counts of identity theft involving the use of credit card information of one of the victims).

Defendant's voice during the phone calls because the sales manager had spoken on the phone with Defendant several times before. The regional manager was also familiar with Defendant, as he had met with Defendant in person and spoken with her several times by phone.

Lieutenant James P. Blanton, Jr., took over as the lead investigator on the case. During his first interview with Defendant at the police station, Defendant told Blanton that "she didn't do it, that it was her ex-boyfriend and his girlfriend" who were responsible. When Defendant returned to the police station a few days later, she told Blanton that "she was the one that did it" and specifically admitted to the four transactions at Aaron's. Defendant explained that she had obtained credit card information through an online customer service job. Upon Blanton's request, Defendant returned to the station a couple of days later with a hand-written confession. In the signed statement, Defendant admitted that she had obtained other people's credit card information about a year earlier "through an at-home job." Although she intended when she obtained the information to use it right away, she did not do so until she later felt "backed into a corner" in June and July 2015, when she conducted the fraudulent transactions.

Blanton's investigation revealed that Defendant used the credit card information of Kathryn L. Griffin for two of the transactions at Aaron's and that of Janice K. Mooney for the other two transactions.

Blanton also learned that Defendant used Mooney's credit card information to make two purchases in person on 6 June 2015 at First Class Tanning in Wallace.[2] Defendant gave the credit card information, which Defendant had written on a piece of paper, verbally to the sales attendant and signed her own name on the receipts. First Class Tanning was charged back for both of these purchases when payment was refused by the credit card holder. The employees at First Class Tanning were familiar with Defendant because she had been a customer there for about five years.

At trial, the State presented evidence including Defendant's hand-written confession, testimony of Aaron's and First Class Tanning employees involved in the transactions, receipts for payments made at Aaron's, chargeback documents for the four Aaron's transactions, credit card statements and receipts for Griffin, bank records and a fraud statement for Mooney, and testimony by the investigating officers. Defendant did not present any evidence.

### III. Discussion

*A. Motion to Dismiss for Insufficient Evidence*

Defendant contends that the trial court erred by denying her motion to dismiss the six charges of identity theft for insufficient evidence that Defendant "intended to

---

[2] File number 15 CRS 52497 included four counts of identity theft (two counts for using Griffin's credit card information at Aaron's and two counts for using Mooney's credit card information at Aaron's). File number 17 CRS 111 included two counts of identity theft for using Mooney's credit card information at First Class Tanning.

represent that she was either Janice Mooney or Kathryn Griffin, or anyone other than herself, in any of these transactions."

<u>Preservation of Argument for Appellate Review</u>

As a preliminary matter, we address the State's contention that Defendant's argument is not properly before us because Defendant's motion at trial only challenged the two counts of identity theft related to Kathryn Griffin and presented a different argument than Defendant now raises on appeal.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). A general motion to dismiss for insufficient evidence preserves a defendant's arguments on all elements of all charged offenses, even if the defendant proceeds to specifically argue about fewer than all of the elements or charges. *State v. Pender*, 243 N.C. App. 142, 153, 776 S.E.2d 352, 360 (2015). If, however, a defendant's motion to dismiss does not present a general challenge, and instead only challenges the sufficiency of the evidence of specific elements of specific offenses, the defendant preserves for appellate review only those arguments as to the specified elements of the specified offenses. *State v. Walker*, 252 N.C. App. 409, 413, 798 S.E.2d 529, 532 (2017).

Moreover, "the law does not permit parties to swap horses between courts in order to get a better mount before an appellate court." *Geoscience Grp., Inc. v. Waters Constr. Co.*, 234 N.C. App. 680, 691, 759 S.E.2d 696, 703 (2014) (internal quotation marks and citation omitted). "Consequently, when a defendant presents one argument in support of her motion to dismiss at trial, she may not assert an entirely different ground as the basis of the motion to dismiss before this Court." *State v. Chapman*, 244 N.C. App. 699, 714, 781 S.E.2d 320, 330 (2016) (citation omitted).

In this case, at the close of the State's evidence, Defendant moved to dismiss the two charges of identity theft which pertained to Kathryn Griffin, based on the argument that there was no evidence that those transactions were not authorized by Ms. Griffin, stating:

> Well, I think, at this time, it would be appropriate for me to make a motion. I don't know that I wish to be heard on all of the charges in the indictments, but there are some of them I would like to specifically . . . talk to the Court about.
>
> . . . .
>
> . . . . And those charges would deal with – in 15 CRS 52497, Ms. Carter is charged with numerous counts that deal with a Wells Fargo Bank Visa card that Ms. Kathryn Griffin was the holder of. . . .
>
> . . . .
>
> So the counts I pointed out there in 15 CRS 52497, financial card fraud being one; obtaining property being one; identity theft being one; I don't think any evidence about obtaining property by false pretense. I don't think there's been any evidence, if you take it in the light most favorable to the State, that those transactions weren't

authorized by Ms. Griffin. And we would ask the Court to dismiss those. I don't wish to be heard as to the other charges.

Defendant renewed her motion to dismiss at the close of all of the evidence, "rel[ying] upon [her] earlier arguments," and her motion was denied.

Defendant does not raise the same argument on appeal, however. Instead, Defendant now argues that the trial court erred by denying her motion to dismiss the six charges of identity theft for insufficient evidence that Defendant "intended to represent that she was either Janice Mooney or Kathryn Griffin[.]" Defendant failed to preserve any argument as to the four charges of identity theft pertaining to Mooney. Likewise, Defendant failed to preserve the specific argument—that there was insufficient evidence that Defendant intended to represent that she was Griffin— which she now seeks to make on appeal. We thus decline to reach the merits of her argument. *See Chapman*, 244 N.C. App. at 714, 781 S.E.2d at 330.

Defendant argues that "[t]he interest of justice would be served if this Court reviewed the sufficiency of the evidence in this case" by invoking Rule 2 of the Appellate Rules to suspend or vary the preservation requirements.

An appellate court may address an unpreserved argument "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest[.]" N.C. R. App. P. 2. However, "the authority to invoke Rule 2 is discretionary, and this discretion should only be exercised in exceptional circumstances in which a

fundamental purpose of the appellate rules is at stake." *Pender*, 243 N.C. App. at 148-149, 776 S.E.2d at 358 (internal quotation marks, citations, and ellipsis omitted). This case does not involve exceptional circumstances, and we, in our discretion, decline to invoke Rule 2.

Ineffective Assistance of Counsel

Alternatively, Defendant argues that her trial counsel provided ineffective assistance of counsel ("IAC") by failing to preserve this argument for appellate review.

Claims of ineffective assistance of counsel generally should be considered through motions for appropriate relief. *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001). However, we may decide the merits of this claim because the trial transcript reveals that no further investigation is required. *See State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001)) ("[IAC] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required . . . .").

To prevail on a claim for IAC, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Banks*, 367 N.C. 652, 655, 766 S.E.2d 334, 337 (2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

To establish whether an attorney's error satisfies the first prong of *Strickland*, a defendant must overcome the strong presumption that defense counsel's conduct falls within the wide range of reasonable professional assistance. *State v. McNeill*, 371 N.C. 198, 219, 813 S.E.2d 797, 812-13 (2018) (internal quotation marks and citation omitted).

Defendant argues on appeal that Defendant's motion to dismiss would have been granted at trial because the State did not put on evidence that Defendant used the names of the two credit card holders, Griffin and Mooney, when she used their credit card information to make purchases. We disagree.

Denial of a motion to dismiss is proper if there is substantial evidence of each essential element of the offense and that the defendant was the perpetrator. *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *State v. Jones*, 367 N.C. 299, 304, 758 S.E.2d 345, 349 (2014) (internal quotation marks and citation omitted) (explaining that evidence may be direct, circumstantial, or both). When reviewing a challenge to the sufficiency of the

evidence, we view the evidence in the light most favorable to the State and give the State the benefit of "every reasonable inference supported by that evidence." *Id.*

A person is guilty of identity theft when she (1) "knowingly obtains, possesses, or uses identifying information of another person, living or dead," (2) "with the intent to fraudulently represent that [she] is the other person for the purposes of making financial or credit transactions in the other person's name, to obtain anything of value, benefit, or advantage, or for the purpose of avoiding legal consequences . . . ." N.C. Gen. Stat. § 14-113.20(a) (2015). Identifying information includes credit card numbers. N.C. Gen. Stat. § 14-113.20(b)(5) (2015).

"[I]ntent is seldom provable by direct evidence and ordinarily must be proved by circumstances from which it may be inferred." *State v. Hardy*, 299 N.C. 445, 449, 263 S.E.2d 711, 714 (1980). In *Jones*, the Supreme Court applied this well-settled principle to determining fraudulent intent for identity theft: "Based upon the evidence that [defendant] had fraudulently used other individuals' credit card numbers, a reasonable juror could infer that he possessed [the victims'] credit card numbers with the intent to fraudulently represent that [defendant] was those individuals for the purpose of making financial transactions in their names." *Id.* at 305, 758 S.E.2d at 350 (internal quotation marks and citation omitted).

Our Supreme Court also specifically addressed in *Jones* whether a literal interpretation of the "in the other person's name" language in the identity-theft

statute is required to establish fraudulent intent. *See id.* at 306, S.E.2d at 350; N.C. Gen. Stat. § 14-113.20(a) ("with the intent to fraudulently represent that [she] is the other person for the purposes of making financial or credit transactions *in the other person's name*") (emphasis added). The defendant gave merchants fictitious names that were different from the card holders' names when making purchases with victims' credit card numbers. *Jones*, 367 N.C. at 305-06, 758 S.E.2d at 350. The defendant argued that N.C. Gen. Stat. § 14-113.20(a) required the State to prove that the defendant intended to represent to the merchants *that he was* each of the victims, "and not some other individual or an authorized user." *Id.* at 306, 758 S.E.2d at 350. The Court rejected this argument, explaining:

> We generally construe criminal statutes against the State. However, this does not require that words be given their narrowest or most strained possible meaning. A criminal statute is still construed utilizing common sense and legislative intent. Where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, . . . the reason and purpose of the law shall control and the strict letter thereof shall be disregarded. We cannot conclude that the Legislature intended for individuals to escape criminal liability simply by stating or signing a name that differs from the cardholder's name. Such a result would be absurd and contravene the manifest purpose of the Legislature to criminalize fraudulent use of identifying information.

*Id.* (internal quotation marks and citation omitted). "Because the State's evidence was sufficient to raise an inference of [the defendant's] fraudulent intent in

possessing [the victims'] credit card numbers, the trial court did not err by denying [the defendant's] motion to dismiss the charge of identity theft." *Id.*

This case is analogous to *Jones*. Here, Defendant argues that this Court must strictly construe the statute and require the State to present evidence that Defendant intended to fraudulently represent that she *was* Griffin and Mooney for the purposes of making financial or credit transactions *in their names*. Defendant contends that she did not purport to the merchants to be Griffin or Mooney when she presented their credit card information, as Defendant did not verbalize or sign the victims' names when making the purchases. Defendant bolsters her argument by emphasizing that the Aaron's and First Class Tanning employees who processed the transactions were familiar with Defendant personally.

Notwithstanding the merchants' familiarity with Defendant, the State presented evidence that Defendant presented credit card information belonging to Griffin and Mooney in order to conduct transactions with the merchants. The State's evidence included Defendant's hand-written confession, testimony of Aaron's and First Class Tanning employees involved in the transactions, receipts for payments made at Aaron's, chargeback documents for the four Aaron's transactions, credit card statements and receipts for Griffin, bank records and a fraud statement for Mooney, and testimony by the investigating officers.

In light of this evidence that Defendant fraudulently used Griffin's and Mooney's credit card information, a reasonable juror could infer from the circumstances that Defendant possessed this information with the intent to fraudulently represent that she was Griffin and Mooney for the purpose of making financial transactions in their names, *see Hardy*, 299 N.C. at 449, 263 S.E.2d at 714, even if Defendant did not explicitly state the card holders' names or sign the credit card receipts in their names, *see Jones*, 367 N.C. at 306, 758 S.E.2d at 350. As the Supreme Court explained in *Jones*, a literal interpretation of the "in the other person's name" language in the identity-theft statute is not required, and demanding it here would lead to an absurd result—a person who fraudulently uses identifying information could "escape criminal liability simply by stating or signing a name that differs from the cardholder's name." *Jones*, 367 N.C. at 306, 758 S.E.2d at 350.

Because the State presented substantial evidence of fraudulent intent, the trial court would have denied Defendant's motion to dismiss for insufficient evidence even if presented with this argument. Accordingly, defense counsel did not commit error, much less a serious error falling below the reasonableness standard set forth in *Strickland*, by failing to assert this futile argument. Defendant's argument that she was denied effective assistance of counsel is meritless.

## B. *Jury Instruction*

Defendant argues that the trial court committed reversible error by instructing the jury on Defendant's prior false or contradictory statements. Defendant contends that the instruction impugned her character and on this basis requests a new trial.

This Court reviews challenges to a trial court's decisions regarding jury instructions de novo. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). Under a de novo review, this Court "considers the matter anew and freely substitutes its judgment" for that of the lower court. *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008).

"The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973). Generally, a new trial is required if an error in jury instructions is prejudicial. *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009). Prejudice is established by a showing that "'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'" *Id.* (quoting N.C. Gen. Stat. § 15A-1443(a) (2007)).

"Our Supreme Court has held that false, contradictory, or conflicting statements made by an accused concerning the commission of a crime may be

considered as a circumstance tending to reflect the mental processes of a person possessed of a guilty conscience seeking to divert suspicion and to exculpate himself." *State v. Scercy*, 159 N.C. App. 344, 353, 583 S.E.2d 339, 344 (2003) (citations omitted). "The probative force of such evidence is that it tends to show consciousness of guilt." *Id.* (citation omitted).

A trial court may only use a jury instruction to this effect if the defendant's statement is relevant to proving that she committed the crime and indeed provides "substantial probative force, tending to show consciousness of guilt." *State v. Walker*, 332 N.C. 520, 537, 422 S.E.2d 716, 726 (1992). "The instruction is proper not only where defendant's own statements contradict each other but also where defendant's statements flatly contradict relevant evidence." *Id.* at 537-38, 422 S.E.2d at 726. The instruction is inappropriate if it fails to make clear to the jury that the falsehood does not create a presumption of guilt. *State v. Myers*, 309 N.C. 78, 88, 305 S.E.2d 506, 512 (1983).

In Defendant's first statement to Blanton at the police station, she initially denied the crime and blamed it on her ex-boyfriend. However, in her second, hand-written statement, Defendant expressly stated:

> [T]o whom it may concern, I would like to admit to the fraudulent transactions . . . . These transactions were completed . . . by myself . . . . I obtained these numbers through an at-home job I was working. I have had these two numbers for about a year and never used. At the time of getting these, I had intentions of using them but never

did because I rethought my actions. Then I was backed into a corner and didn't think – I am very sorry for my actions and will do what is necessary to keep from being prosecuted.

Thus, the trial court did not err in determining that Defendant made two conflicting statements. The trial court gave the following pattern jury instruction on false, contradictory, or conflicting statements by the defendant:

The State contends, and the defendant denies, that the defendant made false, contradictory, or conflicting statements. If you find that the defendant made such statements, they may be considered by you as a circumstance tending to reflect the mental process of a person possessed of a guilty conscience seeking to divert suspicion or exculpate the person, and you should consider that evidence, along with all other believable evidence in this case. However, if you find that the defendant made such statements, they do not create a presumption of guilt and such evidence standing alone is insufficient to establish guilt.

*See* N.C.P.I.—Crim. 105.21 (2017).[3]

---

[3] North Carolina Pattern Jury Instruction 105.21 contains the following note: *NOTE WELL: This instruction is ONLY proper where the defendant's statements and/or trial testimony is contradictory to highly relevant facts proven at trial. HOWEVER, this instruction should NOT be used if the statements are completely irrelevant and without substantial probative force in tending to show a consciousness of guilt. EXTREME care should be used in first degree murder cases as such evidence may not be considered as tending to show premeditation and deliberation. . . . EXTREME care should also be taken to insure that the defendant's Fifth Amendment right to remain silent is not used against the defendant.* N.C.P.I.—Crim. 105.21 (2017) (emphasis in original). As explained in Discussion, Part B, Defendant's contradictory statements are highly relevant to proving Defendant's "possess[ion] of a guilty conscience seeking to divert suspicion and to exculpate [her]self." *Scercy*, 159 N.C. App. at 353, 583 S.E.2d at 344. Thus, the jury instruction does not run afoul of the prohibitions or cautions contained in this note.

In this case, it was proper for the jury to consider the existence of Defendant's false, contradictory, and conflicting statements as "a circumstance tending to reflect the mental processes of a person possessed of a guilty conscience seeking to divert suspicion and to exculpate [her]self." *Scercy*, 159 N.C. App. at 353, 583 S.E.2d at 344. In her first statement to police, Defendant sought to exculpate herself by blaming her ex-boyfriend. Not only was Defendant's second statement contradictory to the first, but it was relevant to proving that she committed the crime, and it indeed provided "substantial probative force, tending to show consciousness of [her] guilt." *Walker*, 332 N.C. at 537, 422 S.E.2d at 726. Use of this jury instruction on these facts is consistent with the Supreme Court's application of the instruction because Defendant's own statements contradicted each other and they flatly contradicted evidence presented at trial. *See id.* at 537-38, 422 S.E.2d at 726. Moreover, the trial court made clear in the jury instruction that the statements "d[id] not create a presumption of guilt[,] and such evidence standing alone is insufficient to establish guilt." *Myers*, 309 N.C. at 88, 305 S.E.2d at 512. For these reasons, we conclude that the instruction was proper.

## IV. Conclusion

We conclude that the trial court did not err by denying Defendant's motion to dismiss for insufficient evidence of identity theft or by instructing the jury regarding false or contradictory statements.

NO ERROR.

Judges BRYANT and YOUNG concur.