DAVIS, Judge.
 

 *700
 
 Thomas Steven Chapman ("Chapman") and Stephanie Marie Thibault ("Thibault") (collectively "Defendants") appeal from the trial court's judgments entered on the jury's verdicts finding each of them guilty of robbery with a dangerous weapon. After careful review, we conclude that Defendants received a fair trial free from prejudicial error.
 

 *701
 

 Factual Background
 

 The State's evidence at trial tended to establish the following facts: On 14 April 2013, Colin Adkins ("Adkins") was working the night shift as a store clerk at the Market Express convenience store in Stallings, North Carolina. At approximately 10:00 p.m. that evening, a man entered the store wearing a black hooded sweatshirt "with a graphic across the front," jeans, tennis shoes, and a blue bandana pulled up over his face and nose. The man pulled out a black and
 
 *323
 
 silver firearm that "looked about the size of a thirty-eight special" and told Adkins to give him "everything in the register." Initially, the man pointed the gun at Adkins' head and upper body. He then moved behind the counter and pressed the gun into Adkins' ribs. Adkins handed approximately $1,000.00 from one of the store's cash registers to the man. Although the bandana was covering most of the man's face, Adkins could see that he was "Caucasian." Adkins also estimated that the man was about six feet tall.
 

 The Market Express is connected to a McDonald's restaurant, and Deputy Ian Gross ("Deputy Gross"), a deputy sheriff with the Union County Sheriff's Office, was off-duty and waiting in the drive-thru line of the McDonald's at the time of the robbery. As he was placing his order, Deputy Gross observed a white male in a black hoodie run out of the Market Express. Upon inquiring what was happening, Deputy Gross was informed that the Market Express had just been robbed.
 

 Deputy Gross turned his vehicle around and drove across the street in the direction the man had been running. He lost sight of the man for approximately 15 seconds but then noticed a single car in the parking lot of the Grand Asian Market, which was closed at the time. Deputy Gross decided to pursue the vehicle, a teal Nissan Maxima, and followed it for approximately two miles, noting the Maxima's license plate number in the process. As he was following the Maxima, he observed that the vehicle's occupants "appeared to be a female driver and a male passenger."
 

 Deputy Gross returned to the McDonald's to meet the law enforcement officers who had arrived on the scene and report the license plate number of the Maxima. Officers performed a computer check on the license plate number and determined that the listed address for the registered owner of the vehicle was located in the Brandon Oaks neighborhood in Indian Trail, North Carolina. Officers drove to this address and found a teal Nissan Maxima matching the description and license plate number Deputy Gross had provided. The hood of the vehicle was still warm, and the officers saw a black hooded sweatshirt inside the car.
 

 *702
 
 Deputy Michael Crenshaw ("Deputy Crenshaw") with the Union County Sheriff's Office approached the front door of the residence located at this address. Before he had the opportunity to knock on the door, a white female-later identified as Thibault-exited the home and walked toward him. Deputy Crenshaw asked Thibault who was inside the residence, and she replied that her mother, sister, and grandmother were in the home. When Deputy Crenshaw "asked her specifically if there were ... any males inside the home," Thibault responded in the negative. However, as Deputy Crenshaw was speaking with Thibault, he observed a white male who appeared to be about six feet tall hiding behind the front door.
 

 Deputy Crenshaw drew his weapon and ordered the male, who was later identified as Chapman, to exit the home. The other officer on the scene, Corporal J.W. Weatherman ("Corporal Weatherman") of the Stallings Police Department, conducted a pat-down search of Chapman and discovered a large amount of cash on his person.
 

 Law enforcement officers obtained a search warrant for the home and discovered in Thibault's bedroom a pair of jeans, a blue bandana, a black and silver Colt Defender Air Pistol, and a wallet, which contained a North Carolina-issued identification card and driver's license in Chapman's name. Detective Sergeant R.H. Cranford ("Detective Sergeant Cranford") recovered the air pistol from the bedroom and "render[ed] the weapon safe" by removing the air cartridge and allowing the pressurized gas to escape the cartridge. As Detective Sergeant Cranford unscrewed the air cartridge, he could hear the sound of gas leaving the canister. After discovering the above-described items in Thibault's room, Detective Sergeant Cranford arrested Defendants.
 

 On 2 September 2014, a grand jury returned bills of indictment charging Defendants with robbery with a dangerous weapon. Defendants' cases were joined for trial, and a jury trial was held in Union County Superior Court before the Honorable Lynn S. Gullett
 
 *324
 
 beginning on 13 October 2014. As a part of its case against Defendants, the State introduced a videotape of a test fire Detective Sergeant Cranford had conducted utilizing the air pistol recovered from Thibault's bedroom. The video showed Detective Sergeant Cranford firing the air pistol at a sheet of plywood from various distances.
 

 Following the State's case-in-chief, Thibault elected to testify in her own defense. She testified that she had known Chapman since 2007 or 2008 and that he would stay at her home "a couple times a week." She
 
 *703
 
 stated that on the night of 14 April 2013, Chapman came to her house at approximately 7:00 p.m. Thibault offered him leftover spaghetti, but Chapman told her he would " rather get some McDonald's" and that he needed to go out and get cigarettes anyway.
 

 Thibault testified that she accompanied Chapman as he first drove to the Market Express to buy cigarettes. Chapman entered the store by himself and stood in line to purchase the cigarettes. She explained that he then left the store, returned to the car, and pulled into the drive-thru lane for the McDonald's. Thibault testified that they then returned to her house at which point she took a shower, and shortly thereafter the police arrived. Thibault stated that she had not known that the Market Express was robbed, had no reason to believe that Chapman was involved in the robbery, did not drive the get-away car for the robbery, and was not present in the Grand Asian Market parking lot that evening. Thibault also testified that she and her nephew had fired the air pistol at targets in the yard earlier in the day on 14 April 2013 and that the BBs they fired barely made it to the target because the air canister in the air pistol was low and the pressure was weak.
 

 The jury returned verdicts on 21 October 2014 finding both Defendants guilty of robbery with a dangerous weapon. The trial court determined that Chapman had a prior record level of two and sentenced him to a presumptive-range term of 73 to 100 months imprisonment. The court determined that Thibault's prior record level was one and sentenced her to a presumptive-range term of 64 to 89 months imprisonment. Defendants gave oral notice of appeal in open court.
 

 Analysis
 

 On appeal, Defendants both contend that the trial court (1) plainly erred by admitting into evidence a statement from the owner's manual for a Colt Defender CO
 
 2
 
 Air Pistol because the statement constituted inadmissible hearsay; and (2) erred in failing to exercise its discretion with regard to the jury's request to review certain evidence in the course of its deliberations. In addition, Thibault separately argues that (1) the trial court erred in denying her motion to dismiss; (2) the videotape showing several test fires of the air pistol was improperly admitted; (3) she received ineffective assistance of counsel by virtue of her attorney's failure to object to the admission of the statement from the owner's manual for the air pistol; and (4) the trial court erred in allowing the warning label for the air pistol to be read into evidence. We address each of these arguments in turn.
 

 *704
 

 I. Admission of Statement from Owner's Manual
 

 Defendants first contend that the trial court erred in allowing Detective Sergeant Cranford to read a statement from the owner's operation manual for a Colt Defender Air Pistol to the jury because this evidence constituted inadmissible hearsay and violated the Confrontation Clause. Defendants concede that they failed to object to this evidence at trial and are therefore limited to plain error review.
 

 On plain error review, Defendants bear the burden of showing that a fundamental error occurred at trial.
 
 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty."
 

 Id.
 

 (citation and quotation marks omitted).
 

 It is a well-settled principle that hearsay is "a statement, other than one made by the declarant while testifying at the trial
 
 *325
 
 or hearing, offered in evidence to prove the truth of the matter asserted" and that "whenever an extrajudicial statement is offered for a purpose other than proving the truth of the matter asserted, it is not hearsay."
 
 State v. Braxton,
 

 352 N.C. 158
 
 , 190,
 
 531 S.E.2d 428
 
 , 447 (2000) (citations, quotation marks, and alteration omitted),
 
 cert. denied,
 

 531 U.S. 1130
 
 ,
 
 121 S.Ct. 890
 
 ,
 
 148 L.Ed.2d 797
 
 (2001). "A statement which explains a person's subsequent conduct is an example of such admissible nonhearsay."
 
 State v. Canady,
 

 355 N.C. 242
 
 , 248,
 
 559 S.E.2d 762
 
 , 765 (2002).
 

 Here, Detective Sergeant Cranford was asked a series of questions regarding his performance of a test fire using the air pistol recovered from Thibault's bedroom. He testified that he obtained the manual for the Colt Defender Air Pistol "[t]o understand the safety and the operation for that particular model of air pistol." Detective Sergeant Cranford and the prosecutor then had the following exchange:
 

 [Prosecutor]: Okay. Can you explain the information that you relied upon before conducting your test, and read that to the jury.
 

 [Detective Sergeant Cranford]: According to the owner's operation manual, it's a 1.77 caliber, 4.5 millimeter CO
 
 2
 
 powered, shoot still BB's only, velocity of 440 feet per second, danger distance of 325 yards.
 

 Detective Sergeant Cranford proceeded to explain that he had conducted the test fire by firing the air pistol four times from various
 
 *705
 
 distances at a plywood target that was one-fourth of an inch thick. He noted that the information contained in the manual led him to shoot the air pistol at a slight angle when he was in close range of the target "to eliminate possible ricochet" and avoid injury to himself.
 

 Defendants contend that Detective Sergeant Cranford's recitation from the manual of the air pistol's velocity and danger distance was offered to prove that the gun used to commit the robbery was capable of firing projectiles at a speed of 440 feet per second and was dangerous from a distance of 325 yards away such that it constituted a dangerous weapon for purposes of the criminal offense for which they were charged. Based on our review of the trial transcript, however, we conclude that Detective Sergeant Cranford's testimony reciting the above-quoted statement from the owner's manual concerning the danger distance and velocity of the air pistol was offered for a proper nonhearsay purpose-that is, to explain his conduct when performing the test fire-rather than for the purpose of providing the velocity and danger distance of the air pistol to demonstrate that it was, in fact, a dangerous weapon. Therefore, the admission of this evidence was not error at all much less plain error.
 
 See
 

 State v. Wade,
 

 213 N.C.App. 481
 
 , 493,
 
 714 S.E.2d 451
 
 , 459 (2011) (explaining that before trial court's action "can be plain error, it must be error"),
 
 disc. review denied,
 

 366 N.C. 228
 
 ,
 
 726 S.E.2d 181
 
 (2012).
 

 In a related argument, Thibault contends that her trial counsel provided ineffective assistance by failing to object to the admission of this testimony. In order to successfully establish an ineffective assistance of counsel claim, "a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense."
 
 State v. Phillips,
 

 365 N.C. 103
 
 , 118,
 
 711 S.E.2d 122
 
 , 135 (2011) (citation and quotation marks omitted),
 
 cert. denied,
 
 - -- U.S. ----,
 
 132 S.Ct. 1541
 
 ,
 
 182 L.Ed.2d 176
 
 (2012). "Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness."
 
 State v. Allen,
 

 360 N.C. 297
 
 , 316,
 
 626 S.E.2d 271
 
 , 286 (citation and quotation marks omitted),
 
 cert. denied,
 

 549 U.S. 867
 
 ,
 
 127 S.Ct. 164
 
 ,
 
 166 L.Ed.2d 116
 
 (2006). Thibault cannot make this showing here.
 

 As we previously explained, the testimony at issue was offered for a nonhearsay purpose. As a result, an objection in the trial court on hearsay grounds would have been meritless. Moreover, it is also well settled that nonhearsay statements do not offend the Confrontation Clause.
 
 See
 

 State v. Gainey,
 

 355 N.C. 73
 
 , 87,
 
 558 S.E.2d 463
 
 , 473 (explaining that "admission of nonhearsay raises no Confrontation Clause concerns"
 

 *706
 
 (citation and quotation marks omitted)),
 
 cert.
 

 *326
 

 denied,
 

 537 U.S. 896
 
 ,
 
 123 S.Ct. 182
 
 ,
 
 154 L.Ed.2d 165
 
 (2002). Because any objection to Detective Sergeant Cranford's recitation of the statement from the manual on either hearsay or Confrontation Clause grounds would have lacked merit, Thibault's trial counsel was not deficient by failing to raise these objections.
 
 See
 

 Phillips,
 

 365 N.C. at 131
 
 ,
 
 711 S.E.2d at 143
 
 (holding that trial counsel's " failure to object to [a] long-standing evidentiary rule was not objectively unreasonable" and rejecting proposition "that, to avoid being ineffective, defense counsel is required to argue a position untenable under existing North Carolina law").
 

 II. Exercise of Discretion Regarding Jury's Request to Review Testimony
 

 Defendants' next argument is that the trial court erred by failing to exercise its discretion in connection with the jury's request to review certain testimony and that this error was prejudicial. For the reasons set out below, we hold that the trial court did so err but that Defendants have failed to show the prejudice necessary to receive a new trial as a result of this error.
 

 Pursuant to N.C. Gen.Stat. § 15A-1233(a),
 

 [i]f the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.
 

 N.C. Gen.Stat. § 15A-1233(a) (2013). This statutory requirement codifies the well-established common law rule that "the decision whether to grant or refuse a request by the jury for a restatement of the evidence after jury deliberations have begun lies within the discretion of the trial court."
 
 State v. Johnson,
 

 346 N.C. 119
 
 , 124,
 
 484 S.E.2d 372
 
 , 375 (1997).
 

 Our appellate courts have held on a number of occasions that when a trial court "denies a request by the jury to review a transcript based upon its erroneous belief that it has no power or discretion to grant the request, such a denial is error."
 
 State v. White,
 

 163 N.C.App. 765
 
 , 769,
 
 594 S.E.2d 450
 
 , 452,
 
 disc. review denied,
 

 358 N.C. 738
 
 ,
 
 602 S.E.2d 681
 
 (2004) ;
 
 see also
 

 *707
 

 State v. Starr,
 

 365 N.C. 314
 
 , 318,
 
 718 S.E.2d 362
 
 , 366 (2011) (noting "the well-settled rule that a trial court does not exercise its discretion when, as evidenced by its response, it believes it cannot comply with the jury's transcript request").
 

 In this case, during its deliberations the jury sent a note to the trial court requesting (1) Deputy Gross' statement from the night of the incident; (2) Deputy Gross statement resulting from his meeting with an assistant district attorney; and (3) a transcript of Deputy Gross' testimony at trial. The trial court brought the jury back into the courtroom and responded to its requests as follows:
 

 Yes, absolutely, we will send you back the victim witness statement from Deputy Ian Gross the night of the incident. We'll send that back to the jury room to you in just a few minutes.
 

 The other two are problematic. First of all, I need to explain to you that there is not an actual witness statement that was made from Ian Gross to the District Attorney. And there is no such item in evidence so that is not available and there isn't one. So we can't provide that for you.
 

 Secondly, you have requested the transcript of Deputy Gross's testimony from the witness stand. Transcripts aren't automatically generated. That's something that takes several weeks sometimes for a court reporter to do. We can't provide that for you because it is not available at this time.
 

 And let me remind you that it is your duty to recall the testimony to the best of your ability as the jurors in this matter. But we can certainly and will be glad to provide to you the statement of Deputy Gross the night of the incident because
 
 *327
 
 that's all we have available from what you are requesting. So thank you and I'll send you back to the jury room. We'll send that back to you momentarily through the bailiff.
 

 Defendants assert that the trial court's response to the jury's note asking to examine Deputy Gross' trial testimony shows that it did not exercise its discretion in denying that particular request. We agree.
 

 The trial court's explanation that it was refusing the jury's request because a transcript was not currently available is indistinguishable from similar responses to jury requests that have been found by our Supreme
 
 *708
 
 Court to demonstrate a failure to exercise discretion.
 
 See
 

 Johnson,
 

 346 N.C. at 123-24
 
 ,
 
 484 S.E.2d at 375-76
 
 (holding that trial court's statement to jurors that it "need[ed] to instruct you that we will not be able to replay or review the testimony for you.... must be interpreted as a statement that the trial court believed it did not have discretion to consider the request" and thus constituted a failure to exercise discretion);
 
 State v. Ashe,
 

 314 N.C. 28
 
 , 35,
 
 331 S.E.2d 652
 
 , 656-57 (1985) (explaining that trial court's statement to foreperson that "[t]here is no transcript at this point. You and the other jurors will have to take your recollection of the evidence" established that "the trial court erred ... in not exercising its discretion in denying the request").
 

 Here, because the trial court similarly erred by not exercising its discretion in denying the jury's request to review Deputy Gross' testimony, "we must now determine whether the trial court's failure to exercise its discretion resulted in prejudice to [Defendants]."
 
 State v. Long,
 

 196 N.C.App. 22
 
 , 40,
 
 674 S.E.2d 696
 
 , 707 (2009). A review of the pertinent caselaw reveals that a trial court's error in failing to exercise its discretion in denying a jury's request to review testimony constitutes prejudicial error when the requested testimony (1) is "material to the determination of defendant's guilt or innocence"; and (2) involves "issues of some confusion or contradiction" such that the jury would want to review this evidence to fully understand it.
 
 Johnson,
 

 346 N.C. at 126
 
 ,
 
 484 S.E.2d at 377
 
 (citation and quotation marks omitted).
 

 In
 
 Johnson,
 
 the jury asked to review the testimony of the five-year-old child victim and her aunt in a case involving charges of statutory rape and taking indecent liberties with a child.
 
 Id.
 
 at 123,
 
 484 S.E.2d at 375
 
 . The trial court denied the jury's request based on its mistaken belief that it did not have the authority to allow the jury to review the testimony.
 

 Id.
 

 The jury then returned to its deliberations and found the defendant guilty of both charges.
 

 Id.
 

 The defendant appealed, and our Supreme Court concluded that the trial court's error was prejudicial to the defendant, holding as follows:
 

 Having determined that the trial court erred in not exercising its discretion in determining whether to permit the jury to review some of the testimony, we now consider whether these errors were so prejudicial as to entitle defendant to a new trial. We conclude they were. The evidence requested for review by the jury in this case was clearly material to the determination of defendant's guilt or innocence. The testimonies of both J, the victim, and her Aunt Barbara were central to this case, and both
 
 *709
 
 testimonies involved issues of some confusion and contradiction. The medical evidence was inconclusive as to whether J had been raped, and there was no medical proof linking the defendant to the alleged crimes. Further, there were no eyewitnesses to the alleged crimes and no witnesses who heard or saw anything unusual. Thus, J's testimony was crucial because it was the only evidence directly linking defendant to the alleged crimes. As such, J's credibility was the key to the case. J's testimony was likely difficult for the jury to follow or assess due to its often confusing and self-contradictory nature. Barbara's testimony was also important because she was the first person J told about the alleged incident, and she also had information about the incident with J's cousin Jerome, about which J and [another child] testified. Thus, whether the jury fully understood the witnesses' testimony was material to the determination of defendant's guilt or innocence. Defendant was at least entitled to have the jury's request
 
 *328
 
 resolved as a discretionary matter, and it was prejudicial error for the trial judge to refuse to do so.
 

 Id.
 
 at 126,
 
 484 S.E.2d at 377
 
 (internal citations, quotation marks, and brackets omitted).
 

 Likewise in
 
 Long,
 
 this Court held that the trial court's failure to exercise its discretion with regard to the jury's similar request rose to the level of prejudicial error.
 
 Long,
 

 196 N.C.App. at 40-41
 
 ,
 
 674 S.E.2d at 707
 
 . In that case, the jury sought to review a transcript of the testimony of the victim and the defendant in a child rape case.
 
 Id.
 
 at 40,
 
 674 S.E.2d at 707
 
 . We explained that the evidence requested was material to a determination of guilt and that the two testimonies were "[c]ertainly ... contradicting as [the victim] testified she was raped and that defendant committed other sexual offenses against her, while defendant testified he had never touched her inappropriately."
 
 Id.
 
 at 40-41,
 
 674 S.E.2d at 707
 
 (internal citation, quotation marks, and brackets omitted). We further noted that the fact that the defendant had previously confessed to the charges and then recanted this confession at trial would increase the likelihood that the jury would want to review his contradictory testimony.
 
 Id.
 
 at 41,
 
 674 S.E.2d at 707
 
 .
 

 Conversely, in
 
 Starr,
 
 our Supreme Court concluded that the trial court's failure to exercise its discretion in denying the jury's request to review a witness' testimony was not prejudicial under the circumstances.
 

 *710
 

 Starr,
 

 365 N.C. at 320
 
 ,
 
 718 S.E.2d at 366
 
 . In
 
 Starr,
 
 the defendant was charged with one count of assaulting a law enforcement officer with a firearm and four counts of assaulting a firefighter with a firearm arising out of an incident at the defendant's apartment complex.
 
 Id.
 
 at 315,
 
 718 S.E.2d at 364
 
 . The four firefighters and a police officer were dispatched to the defendant's apartment complex after receiving a 911 call reporting water leaking into one of the units.
 

 Id.
 

 The defendant was the upstairs resident from whose unit the leak appeared to originate, and due to a concern that the defendant might be in need of medical assistance, the firefighters and police officer "knocked loudly" on his door and identified themselves.
 

 Id.
 

 The defendant did not respond, and they forced entry.
 

 Id.
 

 One of the firefighters, Marvin Spruill ("Spruill"), saw the defendant standing approximately 12 feet away and pointing a gun in their direction. Spruill and another firefighter heard a "pop" sound before the defendant was ordered to-and, in fact, did-drop his weapon.
 

 Id.
 

 The jury asked to review Spruill's testimony, and its request was denied by the trial judge, who stated "we don't have the capability of realtime transcripts so we cannot provide you with that."
 
 Id.
 
 at 317,
 
 718 S.E.2d at 365
 
 (emphasis omitted). The jury then returned guilty verdicts for the four counts of assaulting a firefighter with a firearm and acquitted the defendant of the one count of assaulting a law enforcement officer with a firearm.
 
 Id.
 
 at 316,
 
 718 S.E.2d at 364
 
 . On appeal, the defendant argued that he was entitled to a new trial based on the trial court's failure to exercise its discretion. Our Supreme Court rejected his contention, explaining that
 

 Defendant bears the burden of showing that he has been prejudiced by the trial court's error in not exercising discretion in accordance with N.C.G.S. § 15A-1233(a). He must show "a reasonable probability that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a).
 

 Defendant argues that "[t]he jury's review of Fireman Spruill's testimony could have reasonably resulted in not guilty verdicts for [defendant] on one or more of the guilty verdicts of the four firemen." Defendant has not carried his burden of proving that the error was prejudicial. He does not explain how the review of Spruill's testimony would have created a reasonable possibility that a different result would have been reached at his trial. The jury
 
 *711
 
 had the opportunity to see and hear Spruill's testimony at trial,
 
 see
 

 State v. Covington,
 

 290 N.C. 313
 
 , 344,
 
 226 S.E.2d 629
 
 , 649-50 (1976), and the testimony was not confusing or contradicted,
 
 see
 

 Johnson,
 

 346 N.C. at 126
 
 ,
 
 484 S.E.2d at 377
 
 . Further, Spruill's testimony was not " 'material to the determination of defendant's guilt
 
 *329
 
 or innocence.' "
 

 Id.
 

 (quoting
 
 Lang,
 
 301 N.C. at 511, 272 S.E.2d at 125 ). Specifically, the requested testimony was incriminating to defendant and came from a witness for the prosecution, unlike alibi testimony or other testimony that would tend to benefit a defendant.
 
 See
 

 State v. Hudson,
 

 331 N.C. 122
 
 , 144-45,
 
 415 S.E.2d 732
 
 , 744 (1992),
 
 cert. denied,
 

 506 U.S. 1055
 
 ,
 
 113 S.Ct. 983
 
 [
 
 122 L.Ed.2d 136
 
 ] (1993) ;
 
 Lang,
 
 301 N.C. at 511, 272 S.E.2d at 125. In addition, Spruill's testimony was not "the only evidence directly linking defendant to the alleged crimes."
 
 Johnson,
 

 346 N.C. at 126
 
 ,
 
 484 S.E.2d at 377
 
 . Rather, three other witnesses gave testimony that corroborated Spruill's testimony. Defendant thus has not demonstrated a reasonable possibility that a different result would have been reached at his trial had the error not been committed.
 

 Id.
 
 at 319-20,
 
 718 S.E.2d at 366
 
 .
 

 Here, both Defendants contend that Deputy Gross' testimony was pivotal in the State's case against them such that the trial court's error in failing to exercise its discretion concerning the jury's request to review that testimony constituted prejudicial error. Chapman contends that he "was prejudiced because without Gross' testimony there was no link between Chapman and the Market Express robbery. None of the persons present at the time of the robbery were able to identify Chapman as the person who robbed the store."
 

 Thibault argues that she was prejudiced because Deputy Gross "placed a female driver in the vehicle with the person who appeared to have robbed [the Market Express]. His accuracy and credibility were crucial to both the State and the defense cases." We address Defendants' respective arguments in turn.
 

 As was the case in
 
 Starr,
 
 the witness testimony at issue here is incriminating as to Chapman and came from a witness for the prosecution. Gross' trial testimony implicating a person matching Chapman's physical description in the robbery was consistent with his statement to law enforcement officers the night of the incident-a statement the jury
 
 *712
 
 was permitted to review during deliberations. Moreover, and contrary to Chapman's argument on appeal, Gross' testimony was not the only evidence linking Chapman to the crime. Adkins also provided a description of the robber's appearance and attire which was consistent with Chapman's physical characteristics and the clothing found in the search of the Nissan Maxima and Thibault's home. Finally, a large amount of cash was found on Chapman's person, and a wallet containing his identification card and driver's license was discovered by law enforcement officers in the same room as and in close proximity to the air pistol and blue bandana.
 

 Thus, the circumstances of the present case are distinguishable from our decision in
 
 State v. Thompkins,
 

 83 N.C.App. 42
 
 ,
 
 348 S.E.2d 605
 
 (1986). In that case, we held that the trial court's failure to exercise its discretion with regard to the jury's request to review the testimony of the individual who identified the defendant as the perpetrator of the offenses was prejudicial error. In
 
 Thompkins,
 
 a felonious breaking or entering and larceny case, the stolen property was not found in the defendant's possession, and the witness' testimony identifying him as the man she saw "carrying a large object in his hands" from the rear of the burglarized home was the only evidence linking the defendant to the crimes.
 
 Id.
 
 at 44,
 
 348 S.E.2d at 606
 
 .
 

 Here, conversely, while Gross' testimony was important in explaining how law enforcement officers came to investigate the Nissan Maxima and Thibault's home, their subsequent investigation yielded additional evidence linking Chapman to the crime-namely, the cash found on his person, the air pistol, and the clothing that matched the description provided by Adkins. Chapman's contention that the trial court's error was prejudicial is therefore overruled.
 

 Thibault asserts that the trial court's error was prejudicial to her because Gross' testimony identified a female as the driver of the vehicle that left the scene of the Market Express robbery with the male suspect. Thibault contends that this testimony was the only evidence that implicated her because
 
 *330
 
 it was the sole support for the State's theory that she either acted in concert with or aided and abetted Chapman in committing the robbery. We disagree.
 

 First, Thibault's own trial testimony placed her in the Nissan Maxima at the Market Express on the night of the robbery. She admitted that she accompanied Chapman to the Market Express and the adjoining McDonald's in the Nissan earlier that evening, she remained in the vehicle while Chapman went inside the store to purchase cigarettes, and
 
 *713
 
 they then drove around to the McDonald's drive-thru lane so he could buy a sandwich. Second, the air pistol and blue bandana were discovered by law enforcement officers in
 
 her
 
 bedroom in
 
 her
 
 own residence, and the Maxima implicated in the robbery was
 
 her
 
 vehicle. Finally, Thibault falsely responded in the negative when asked by Deputy Crenshaw whether there were any men present in her home despite the fact that Chapman was in actuality only a few feet away-hiding behind the front door she had walked through only moments earlier.
 

 For these reasons, Gross' testimony that a female "appeared" to be driving the car he followed that night was not the only evidence indicating that she participated in the Market Express robbery. Moreover, Gross' testimony overall was favorable to the State rather than to Thibault.
 
 See
 

 Starr,
 

 365 N.C. at 319-20
 
 ,
 
 718 S.E.2d at 366
 
 (rejecting defendant's attempt to show error was prejudicial where testimony at issue was "incriminating to defendant and came from a witness for the prosecution" and did not constitute the only evidence linking defendant to offense). Therefore, Thibault has failed to demonstrate a reasonable probability that the outcome of the proceedings would have been different had the jury had the opportunity to review Gross' trial testimony. As such, she has not demonstrated prejudicial error.
 

 III. Denial of Thibault's Motion to Dismiss
 

 Thibault contends that the trial court erred by denying her motion to dismiss the robbery with a dangerous weapon charge for insufficient evidence because the State failed to prove that "she knowingly committed the crime as an actor in concert or as an aider or abettor." At trial, however, Thibault's motion to dismiss the charge against her was based on an entirely different ground-insufficiency of the evidence as to the "dangerous weapon" element of the offense. In asserting this motion, her attorney stated the following:
 

 In this case, Your Honor, the uncontroverted evidence is that the state is alleging that a BB air pistol was used in the commission of this alleged robbery. And we don't feel that the state has provided sufficient evidence of its nature of being a dangerous weapon to satisfy the element required for robbery with a dangerous weapon.
 

 We contend there has been no evidence showing that the manner in which it was used, in which the BB gun was used, rises to the level of being a dangerous weapon. Based upon that, we would ask Your Honor to dismiss the charge of robbery with a dangerous weapon.
 

 *714
 
 It is well established that "the law does not permit parties to swap horses between courts in order to get a better mount before an appellate court."
 
 Geoscience Grp., Inc. v. Waters Constr. Co.,
 
 ---N.C.App. ----, ----,
 
 759 S.E.2d 696
 
 , 703 (2014) (citation, quotation marks, and alteration omitted). Consequently, when a defendant presents one argument in support of her motion to dismiss at trial, she may not assert an entirely different ground as the basis of the motion to dismiss before this Court.
 
 See
 

 State v. Shelly,
 

 181 N.C.App. 196
 
 , 207,
 
 638 S.E.2d 516
 
 , 524 ("When a party changes theories between the trial court and an appellate court, the assignment of error is not properly preserved and is considered waived."),
 
 disc. review denied,
 

 361 N.C. 367
 
 ,
 
 646 S.E.2d 768
 
 (2007).
 

 Because Thibault has failed to properly preserve the specific argument she now seeks to make on appeal regarding the basis upon which her motion to dismiss should have been granted, we decline to reach the merits of her argument.
 
 See
 

 State v. Euceda-Valle,
 

 182 N.C.App. 268
 
 , 271-72,
 
 641 S.E.2d 858
 
 , 861-62 (refusing to consider defendant's argument on appeal regarding denial
 
 *331
 
 of motion to dismiss charge of intentionally maintaining a vehicle for keeping a controlled substance; defendant moved to dismiss charge at trial on basis that he lacked actual knowledge that cocaine was in Nissan and did not have an ownership interest in that vehicle but then "present[ed] a different theory to support his motion to dismiss" on appeal, asserting that "the State failed to prove that he possessed the Nissan with the cocaine in the trunk for a substantial period of time"),
 
 appeal dismissed and disc. review denied,
 

 361 N.C. 698
 
 ,
 
 652 S.E.2d 923
 
 (2007).
 

 IV. Videotape of Test Fire
 

 Thibault next asserts that the videotape showing Detective Sergeant Cranford test firing the Colt Defender Air Pistol was improperly admitted because the State failed to demonstrate that "the capabilities of the air pistol at the time of the experiment were substantially similar to those at the time of the taking of the property."
 

 It is well established that "[t]he determinative question in reviewing whether a weapon may be considered dangerous [for purposes of robbery with a dangerous weapon], is whether the evidence was sufficient to support a jury finding that a person's life was in fact endangered or threatened."
 
 State v. Hall,
 

 165 N.C.App. 658
 
 , 665,
 
 599 S.E.2d 104
 
 , 108 (2004) (citation, quotation marks, and emphasis omitted). In prior cases involving pellet or BB guns, we have held that the State presented sufficient evidence of the dangerous nature of the weapon by demonstrating that it "was capable of denting a quarter-inch piece of cedar plywood at
 
 *715
 
 distances up to two feet" and that the defendant had pointed the weapon at the victim's face from a distance of six to eight inches.
 
 Id.
 
 at 665-66,
 
 599 S.E.2d at
 
 108 ;
 
 see also
 

 State v. Westall,
 

 116 N.C.App. 534
 
 , 540-41,
 
 449 S.E.2d 24
 
 , 28 (holding that "there was clearly sufficient evidence to permit the jury to decide whether defendant committed robbery with a dangerous weapon" where evidence showed that (1) defendant had placed pellet gun directly against victim's back; and (2) the pellet gun was capable of "totally penetrating a quarter-inch of plywood"),
 
 disc. review denied,
 

 338 N.C. 671
 
 ,
 
 453 S.E.2d 185
 
 (1994).
 

 In the present case, the videotape viewed by the jury showed Detective Sergeant Cranford performing a similar experiment to test the shooting capabilities of this particular air pistol. Specifically, he fired the air pistol four times at a plywood sheet from various distances while another law enforcement officer videotaped him doing so.
 

 Thibault contends that the videotaped experiment should not have been admitted into evidence here because (1) during the test fire, the State utilized a new, unopened air cartridge, which contained a higher level of air pressure and thus was capable of firing a projectile with greater impact than an air cartridge that has previously been used; and (2) Thibault testified that she and her nephew had fired the air pistol recovered from her home just a few hours before the robbery at which time the air pistol's CO
 
 2
 
 cartridge was so low that the shots they fired barely made it to the target.
 

 Experimental evidence is competent and admissible if the experiment is carried out under substantially similar circumstances to those which surrounded the original occurrence. The absence of exact similarity of conditions does not require exclusion of the evidence, but rather goes to its weight with the jury. The trial court is generally afforded broad discretion in determining whether sufficient similarity of conditions has been shown.
 

 State v. Locklear,
 

 349 N.C. 118
 
 , 147,
 
 505 S.E.2d 277
 
 , 294 (1998) (internal citations omitted),
 
 cert. denied,
 

 526 U.S. 1075
 
 ,
 
 119 S.Ct. 1475
 
 ,
 
 143 L.Ed.2d 559
 
 (1999).
 

 Our Court has held the substantial similarity requirement for experimental evidence "does not require precise reproduction of circumstances."
 
 State v. Clifton,
 

 125 N.C.App. 471
 
 , 477,
 
 481 S.E.2d 393
 
 , 397,
 
 disc. review improvidently allowed,
 

 347 N.C. 391
 
 ,
 
 493 S.E.2d 56
 
 (1997). The trial court must consider whether the differences between conditions can be explained by the witness so that any effects arising from the dissimilarity may be understood by the jury, and "[c]andid
 
 *716
 
 acknowledgement of dissimilarities and limitations
 
 *332
 
 of the experiment" is generally sufficient to prevent experimental evidence from being prejudicial.
 

 Id.
 

 Here, Detective Sergeant Cranford testified that he utilized the actual Colt Defender Air Pistol that he recovered from Thibault's bedroom to conduct the test fire. He explained that (1) he had previously released the pressurized air from the cartridge that was in the air pistol when it was first recovered in order to "render the weapon safe prior to transporting it [and] storing it"; and (2) the owner's manual for the weapon cautioned users to "never attempt to reuse a CO
 
 2
 
 capsule for any purpose." Consequently, when he performed the test fire he loaded the air pistol with a new CO
 
 2
 
 cartridge that complied with the specifications recommended in the Colt Defender owner's manual. In discussing his experiment at trial, he acknowledged both that the pressure level of an air cartridge dissipates over time and use, decreasing the force with which the BB is projected from the gun, and that while he had heard the sound of gas escaping when he unscrewed the cartridge to "render the weapon safe," he was unsure of the precise amount of air that was present within the cartridge at the time of the weapon's recovery.
 

 We conclude that the trial court did not err in admitting the video of the test fire. In his experiment, Detective Sergeant Cranford utilized the same weapon Chapman brandished during the robbery and fired it at a target from several close-range positions that were comparable to the various distances from which the air pistol had been pointed at Adkins. Detective Sergeant Cranford noted the possible dissimilarity between the amount of gas present in the air cartridge at the time of the robbery and the amount of gas contained within the new cartridge used for the experiment, acknowledging the effect that greater air pressure would have on the force of the projectile and its impact on a target.
 
 See
 

 State v. Jones,
 

 287 N.C. 84
 
 , 99,
 
 214 S.E.2d 24
 
 , 34 (1975) (holding that "[p]recise reproduction of circumstances is not required" when witness accounts for and explains effect of any dissimilarities);
 
 see also
 

 State v. Golphin,
 

 352 N.C. 364
 
 , 434,
 
 533 S.E.2d 168
 
 , 215 (2000) (explaining with regard to experimental evidence that "exclusion is not required when the conditions are not exactly similar; rather, it goes to the weight of the evidence with the jury"),
 
 cert. denied,
 

 532 U.S. 931
 
 ,
 
 121 S.Ct. 1379
 
 ,
 
 149 L.Ed.2d 305
 
 (2001). Moreover, the trial transcript reveals that Detective Sergeant Cranford was cross-examined by defense counsel on this issue.
 

 We further note that while Thibault asserts the air pressure of the cartridge had been severely diminished on the day of the robbery, she does not take issue with the State's evidence that during the time period
 
 *717
 
 in which the robbery took place the air pistol was operable, loaded with an air cartridge and BB pellets, and pointed at a target from a very close range-conditions that were replicated in the test fire. Thibault's argument on this issue is therefore overruled.
 

 V. Warning Label
 

 Finally, Thibault argues that the portion of Detective Sergeant Cranford's testimony in which he read the warning statement included in the owner's manual for the Colt Defender Air Pistol was improperly admitted because this statement constituted inadmissible hearsay and violated the Confrontation Clause. Specifically, he testified as follows regarding the warning statement:
 

 [Prosecutor]: [D]id you obtain an owner's manual for that weapon?
 

 [Detective Sergeant Cranford]: Yes.
 

 [Prosecutor]: Why did you do that?
 

 [Detective Sergeant Cranford]: To understand the safety and the operation for that particular model of air pistol.
 

 ....
 

 [Prosecutor]: Is there a warning beneath there that you relied upon?
 

 [Detective Sergeant Cranford]: Yes, sir. There is.
 

 [Prosecutor]: Would you read that warning that's just below that information?
 

 [Thibault's trial counsel]: Objection, Your Honor.
 

 [The Court]: Noted for the record. Overruled.
 

 [Prosecutor:] Please speak into the mic so you can be heard.
 

 *333
 
 [Detective Sergeant Cranford]: It says, "Warning, not a toy, adult supervision required, misuse or careless use may cause serious injury or death, may be dangerous up to 325 yards or 297 meters" in parentheses.
 

 Unlike the other testimony by Detective Sergeant Cranford regarding the manual's contents, his testimony concerning the warning statement contained in the manual was objected to by Thibault's trial counsel. That
 
 *718
 
 objection, however, was based on a different ground than that asserted by her on appeal. Rather than making the hearsay and Confrontation Clause arguments she is currently asserting, she argued instead in the trial court that the introduction of the warning statement would be unfairly prejudicial because "these warnings are created ... in order to make protections against (sic) the manufacturer against lawsuits, and, therefore, they overinflate the possibilities of serious injury that may result from improper use." The trial court overruled her objection on that specific ground, stating that "the evidence is highly probative, and the Court doesn't believe that it's unfairly prejudicial."
 

 As discussed above, "[a] defendant cannot swap horses between courts in order to get a better mount."
 
 State v. Howard,
 

 228 N.C.App. 103
 
 , 107,
 
 742 S.E.2d 858
 
 , 860 (2013) (citation and quotation marks omitted),
 
 aff'd per curiam,
 

 367 N.C. 320
 
 ,
 
 754 S.E.2d 417
 
 (2014). Therefore, once again, we do not reach the merits of her argument on this issue.
 
 See
 
 id.
 

 (refusing to review defendant's argument on appeal that evidence violated Rule 404(b) where defendant objected at trial only to evidence's prejudicial effect under Rule 403).
 

 Conclusion
 

 For the reasons stated above, we conclude that both Defendants received a fair trial free from prejudicial error.
 

 NO PREJUDICIAL ERROR.
 

 Chief Judge McGEE and Judge ELMORE concur.