IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-44

 Filed: 7 January 2020

Duplin County, Nos. 15 CRS 52497, 17 CRS 111

STATE OF NORTH CAROLINA,

 v.

DIANNA MICHELLE CARTER, Defendant.

 Appeal by Defendant from judgments entered 1 February 2018 by Judge

Joshua W. Willey, Jr., in Duplin County Superior Court. Heard in the Court of

Appeals 17 September 2019.

 Attorney General Joshua H. Stein, by Deputy General Counsel Blake W.
 Thomas and Duplin County Assistant District Attorney Michele-Ellen Morton,
 for the State-Appellee.

 Kimberly P. Hoppin for Defendant-Appellant.

 COLLINS, Judge.

 Defendant Dianna Michelle Carter appeals from judgments entered upon jury

verdicts of guilty of financial card fraud, obtaining property by false pretenses,

identity theft, and attaining habitual felon status. On appeal, Defendant argues that

the trial court erred by denying her motion to dismiss the charges of identity theft for

insufficient evidence and by instructing the jury on false or conflicting statements.

We discern no error.
 STATE V. CARTER

 Opinion of the Court

 I. Procedural History

 A jury found Defendant guilty in July 2017 of financial card fraud, obtaining

property by false pretenses, identity theft, and attaining the status of habitual felon.1

The trial court entered judgments upon the jury’s verdicts on 1 February 2018,

sentencing Defendant to consecutive prison terms of 133 to 172 months and 96 to 128

months. Defendant gave oral notice of appeal in court.

 II. Factual Background

 The State’s evidence at trial tended to show: On 29 August 2015, Corporal

Jerry Wood of the Wallace Police Department received a phone call from the regional

manager of Aaron’s Rental (“Aaron’s”), reporting suspected fraud by Defendant.

Aaron’s had been charged back for four credit card transactions wherein Defendant

provided payment to Aaron’s by credit card over the phone, and payment to the credit

card companies was subsequently refused by the credit card holders. Wood learned

in telephone interviews with the regional manager and the sales manager that

Defendant called Aaron’s on 8 June 2015 and 7 July 2015 to make payments on her

own account at Aaron’s, and on her daughter’s account. Each time, Defendant

identified herself as Dianna Carter and gave the sales manager a credit card number,

expiration date, and security code for payment. The sales manager recognized

 1 The charges were brought in two file numbers: 15 CRS 52497 (included four counts of identity
theft involving the use of credit card information of two victims) and 17 CRS 111 (included two counts
of identity theft involving the use of credit card information of one of the victims).

 -2-
 STATE V. CARTER

 Opinion of the Court

Defendant’s voice during the phone calls because the sales manager had spoken on

the phone with Defendant several times before. The regional manager was also

familiar with Defendant, as he had met with Defendant in person and spoken with

her several times by phone.

 Lieutenant James P. Blanton, Jr., took over as the lead investigator on the

case. During his first interview with Defendant at the police station, Defendant told

Blanton that “she didn’t do it, that it was her ex-boyfriend and his girlfriend” who

were responsible. When Defendant returned to the police station a few days later,

she told Blanton that “she was the one that did it” and specifically admitted to the

four transactions at Aaron’s. Defendant explained that she had obtained credit card

information through an online customer service job. Upon Blanton’s request,

Defendant returned to the station a couple of days later with a hand-written

confession. In the signed statement, Defendant admitted that she had obtained other

people’s credit card information about a year earlier “through an at-home job.”

Although she intended when she obtained the information to use it right away, she

did not do so until she later felt “backed into a corner” in June and July 2015, when

she conducted the fraudulent transactions.

 Blanton’s investigation revealed that Defendant used the credit card

information of Kathryn L. Griffin for two of the transactions at Aaron’s and that of

Janice K. Mooney for the other two transactions.

 -3-
 STATE V. CARTER

 Opinion of the Court

 Blanton also learned that Defendant used Mooney’s credit card information to

make two purchases in person on 6 June 2015 at First Class Tanning in Wallace.2

Defendant gave the credit card information, which Defendant had written on a piece

of paper, verbally to the sales attendant and signed her own name on the receipts.

First Class Tanning was charged back for both of these purchases when payment was

refused by the credit card holder. The employees at First Class Tanning were familiar

with Defendant because she had been a customer there for about five years.

 At trial, the State presented evidence including Defendant’s hand-written

confession, testimony of Aaron’s and First Class Tanning employees involved in the

transactions, receipts for payments made at Aaron’s, chargeback documents for the

four Aaron’s transactions, credit card statements and receipts for Griffin, bank

records and a fraud statement for Mooney, and testimony by the investigating

officers. Defendant did not present any evidence.

 III. Discussion

 A. Motion to Dismiss for Insufficient Evidence

 Defendant contends that the trial court erred by denying her motion to dismiss

the six charges of identity theft for insufficient evidence that Defendant “intended to

 2 File number 15 CRS 52497 included four counts of identity theft (two counts for using
Griffin’s credit card information at Aaron’s and two counts for using Mooney’s credit card information
at Aaron’s). File number 17 CRS 111 included two counts of identity theft for using Mooney’s credit
card information at First Class Tanning.

 -4-
 STATE V. CARTER

 Opinion of the Court

represent that she was either Janice Mooney or Kathryn Griffin, or anyone other than

herself, in any of these transactions.”

 Preservation of Argument for Appellate Review

 As a preliminary matter, we address the State’s contention that Defendant’s

argument is not properly before us because Defendant’s motion at trial only

challenged the two counts of identity theft related to Kathryn Griffin and presented

a different argument than Defendant now raises on appeal.

 “In order to preserve an issue for appellate review, a party must have

presented to the trial court a timely request, objection, or motion, stating the specific

grounds for the ruling the party desired the court to make if the specific grounds were

not apparent from the context.” N.C. R. App. P. 10(a)(1). A general motion to dismiss

for insufficient evidence preserves a defendant’s arguments on all elements of all

charged offenses, even if the defendant proceeds to specifically argue about fewer

than all of the elements or charges. State v. Pender, 243 N.C. App. 142, 153, 776

S.E.2d 352, 360 (2015). If, however, a defendant’s motion to dismiss does not present

a general challenge, and instead only challenges the sufficiency of the evidence of

specific elements of specific offenses, the defendant preserves for appellate review

only those arguments as to the specified elements of the specified offenses. State v.

Walker, 252 N.C. App. 409, 413, 798 S.E.2d 529, 532 (2017).

 -5-
 STATE V. CARTER

 Opinion of the Court

 Moreover, “the law does not permit parties to swap horses between courts in

order to get a better mount before an appellate court.” Geoscience Grp., Inc. v. Waters

Constr. Co., 234 N.C. App. 680, 691, 759 S.E.2d 696, 703 (2014) (internal quotation

marks and citation omitted). “Consequently, when a defendant presents one

argument in support of her motion to dismiss at trial, she may not assert an entirely

different ground as the basis of the motion to dismiss before this Court.” State v.

Chapman, 244 N.C. App. 699, 714, 781 S.E.2d 320, 330 (2016) (citation omitted).

 In this case, at the close of the State’s evidence, Defendant moved to dismiss

the two charges of identity theft which pertained to Kathryn Griffin, based on the

argument that there was no evidence that those transactions were not authorized by

Ms. Griffin, stating:

 Well, I think, at this time, it would be appropriate
 for me to make a motion. I don’t know that I wish to be
 heard on all of the charges in the indictments, but there are
 some of them I would like to specifically . . . talk to the
 Court about.
 ....
 . . . . And those charges would deal with – in 15 CRS
 52497, Ms. Carter is charged with numerous counts that
 deal with a Wells Fargo Bank Visa card that Ms. Kathryn
 Griffin was the holder of. . . .
 ....
 So the counts I pointed out there in 15 CRS 52497,
 financial card fraud being one; obtaining property being
 one; identity theft being one; I don’t think any evidence
 about obtaining property by false pretense. I don’t think
 there’s been any evidence, if you take it in the light most
 favorable to the State, that those transactions weren’t

 -6-
 STATE V. CARTER

 Opinion of the Court

 authorized by Ms. Griffin. And we would ask the Court to
 dismiss those. I don’t wish to be heard as to the other
 charges.

Defendant renewed her motion to dismiss at the close of all of the evidence, “rel[ying]

upon [her] earlier arguments,” and her motion was denied.

 Defendant does not raise the same argument on appeal, however. Instead,

Defendant now argues that the trial court erred by denying her motion to dismiss the

six charges of identity theft for insufficient evidence that Defendant “intended to

represent that she was either Janice Mooney or Kathryn Griffin[.]” Defendant failed

to preserve any argument as to the four charges of identity theft pertaining to

Mooney. Likewise, Defendant failed to preserve the specific argument—that there

was insufficient evidence that Defendant intended to represent that she was Griffin—

which she now seeks to make on appeal. We thus decline to reach the merits of her

argument. See Chapman, 244 N.C. App. at 714, 781 S.E.2d at 330.

 Defendant argues that “[t]he interest of justice would be served if this Court

reviewed the sufficiency of the evidence in this case” by invoking Rule 2 of the

Appellate Rules to suspend or vary the preservation requirements.

 An appellate court may address an unpreserved argument “[t]o prevent

manifest injustice to a party, or to expedite decision in the public interest[.]” N.C. R.

App. P. 2. However, “the authority to invoke Rule 2 is discretionary, and this

discretion should only be exercised in exceptional circumstances in which a

 -7-
 STATE V. CARTER

 Opinion of the Court

fundamental purpose of the appellate rules is at stake.” Pender, 243 N.C. App. at

148-149, 776 S.E.2d at 358 (internal quotation marks, citations, and ellipsis omitted).

This case does not involve exceptional circumstances, and we, in our discretion,

decline to invoke Rule 2.

 Ineffective Assistance of Counsel

 Alternatively, Defendant argues that her trial counsel provided ineffective

assistance of counsel (“IAC”) by failing to preserve this argument for appellate review.

 Claims of ineffective assistance of counsel generally should be considered

through motions for appropriate relief. State v. Stroud, 147 N.C. App. 549, 553, 557

S.E.2d 544, 547 (2001). However, we may decide the merits of this claim because the

trial transcript reveals that no further investigation is required. See State v. Fair,

354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001)) (“[IAC] claims brought on direct review

will be decided on the merits when the cold record reveals that no further

investigation is required . . . .”).

 To prevail on a claim for IAC, a defendant must satisfy a two-part test:

 First, the defendant must show that counsel’s performance
 was deficient. This requires showing that counsel made
 errors so serious that counsel was not functioning as the
 “counsel” guaranteed the defendant by the Sixth
 Amendment. Second, the defendant must show that the
 deficient performance prejudiced the defense. This
 requires showing that counsel’s errors were so serious as to
 deprive the defendant of a fair trial, a trial whose result is
 reliable.

 -8-
 STATE V. CARTER

 Opinion of the Court

State v. Banks, 367 N.C. 652, 655, 766 S.E.2d 334, 337 (2014) (quoting Strickland v.

Washington, 466 U.S. 668, 687 (1984)).

 To establish whether an attorney’s error satisfies the first prong of Strickland,

a defendant must overcome the strong presumption that defense counsel’s conduct

falls within the wide range of reasonable professional assistance. State v. McNeill,

371 N.C. 198, 219, 813 S.E.2d 797, 812-13 (2018) (internal quotation marks and

citation omitted).

 Defendant argues on appeal that Defendant’s motion to dismiss would have

been granted at trial because the State did not put on evidence that Defendant used

the names of the two credit card holders, Griffin and Mooney, when she used their

credit card information to make purchases. We disagree.

 Denial of a motion to dismiss is proper if there is substantial evidence of each

essential element of the offense and that the defendant was the perpetrator. State v.

Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (internal quotation marks and

citation omitted). “Substantial evidence is relevant evidence that a reasonable person

might accept as adequate, or would consider necessary to support a particular

conclusion.” State v. Jones, 367 N.C. 299, 304, 758 S.E.2d 345, 349 (2014) (internal

quotation marks and citation omitted) (explaining that evidence may be direct,

circumstantial, or both). When reviewing a challenge to the sufficiency of the

 -9-
 STATE V. CARTER

 Opinion of the Court

evidence, we view the evidence in the light most favorable to the State and give the

State the benefit of “every reasonable inference supported by that evidence.” Id.

 A person is guilty of identity theft when she (1) “knowingly obtains, possesses,

or uses identifying information of another person, living or dead,” (2) “with the intent

to fraudulently represent that [she] is the other person for the purposes of making

financial or credit transactions in the other person’s name, to obtain anything of

value, benefit, or advantage, or for the purpose of avoiding legal consequences . . . .”

N.C. Gen. Stat. § 14-113.20(a) (2015). Identifying information includes credit card

numbers. N.C. Gen. Stat. § 14-113.20(b)(5) (2015).

 “[I]ntent is seldom provable by direct evidence and ordinarily must be proved

by circumstances from which it may be inferred.” State v. Hardy, 299 N.C. 445, 449,

263 S.E.2d 711, 714 (1980). In Jones, the Supreme Court applied this well-settled

principle to determining fraudulent intent for identity theft: “Based upon the

evidence that [defendant] had fraudulently used other individuals’ credit card

numbers, a reasonable juror could infer that he possessed [the victims’] credit card

numbers with the intent to fraudulently represent that [defendant] was those

individuals for the purpose of making financial transactions in their names.” Id. at

305, 758 S.E.2d at 350 (internal quotation marks and citation omitted).

 Our Supreme Court also specifically addressed in Jones whether a literal

interpretation of the “in the other person’s name” language in the identity-theft

 - 10 -
 STATE V. CARTER

 Opinion of the Court

statute is required to establish fraudulent intent. See id. at 306, S.E.2d at 350; N.C.

Gen. Stat. § 14-113.20(a) (“with the intent to fraudulently represent that [she] is the

other person for the purposes of making financial or credit transactions in the other

person’s name”) (emphasis added). The defendant gave merchants fictitious names

that were different from the card holders’ names when making purchases with

victims’ credit card numbers. Jones, 367 N.C. at 305-06, 758 S.E.2d at 350. The

defendant argued that N.C. Gen. Stat. § 14-113.20(a) required the State to prove that

the defendant intended to represent to the merchants that he was each of the victims,

“and not some other individual or an authorized user.” Id. at 306, 758 S.E.2d at 350.

The Court rejected this argument, explaining:

 We generally construe criminal statutes against the State.
 However, this does not require that words be given their
 narrowest or most strained possible meaning. A criminal
 statute is still construed utilizing common sense and
 legislative intent. Where a literal interpretation of the
 language of a statute will lead to absurd results, or
 contravene the manifest purpose of the Legislature, . . . the
 reason and purpose of the law shall control and the strict
 letter thereof shall be disregarded. We cannot conclude
 that the Legislature intended for individuals to escape
 criminal liability simply by stating or signing a name that
 differs from the cardholder’s name. Such a result would be
 absurd and contravene the manifest purpose of the
 Legislature to criminalize fraudulent use of identifying
 information.

Id. (internal quotation marks and citation omitted). “Because the State’s evidence

was sufficient to raise an inference of [the defendant’s] fraudulent intent in

 - 11 -
 STATE V. CARTER

 Opinion of the Court

possessing [the victims’] credit card numbers, the trial court did not err by denying

[the defendant’s] motion to dismiss the charge of identity theft.” Id.

 This case is analogous to Jones. Here, Defendant argues that this Court must

strictly construe the statute and require the State to present evidence that Defendant

intended to fraudulently represent that she was Griffin and Mooney for the purposes

of making financial or credit transactions in their names. Defendant contends that

she did not purport to the merchants to be Griffin or Mooney when she presented

their credit card information, as Defendant did not verbalize or sign the victims’

names when making the purchases. Defendant bolsters her argument by

emphasizing that the Aaron’s and First Class Tanning employees who processed the

transactions were familiar with Defendant personally.

 Notwithstanding the merchants’ familiarity with Defendant, the State

presented evidence that Defendant presented credit card information belonging to

Griffin and Mooney in order to conduct transactions with the merchants. The State’s

evidence included Defendant’s hand-written confession, testimony of Aaron’s and

First Class Tanning employees involved in the transactions, receipts for payments

made at Aaron’s, chargeback documents for the four Aaron’s transactions, credit card

statements and receipts for Griffin, bank records and a fraud statement for Mooney,

and testimony by the investigating officers.

 - 12 -
 STATE V. CARTER

 Opinion of the Court

 In light of this evidence that Defendant fraudulently used Griffin’s and

Mooney’s credit card information, a reasonable juror could infer from the

circumstances that Defendant possessed this information with the intent to

fraudulently represent that she was Griffin and Mooney for the purpose of making

financial transactions in their names, see Hardy, 299 N.C. at 449, 263 S.E.2d at 714,

even if Defendant did not explicitly state the card holders’ names or sign the credit

card receipts in their names, see Jones, 367 N.C. at 306, 758 S.E.2d at 350. As the

Supreme Court explained in Jones, a literal interpretation of the “in the other

person’s name” language in the identity-theft statute is not required, and demanding

it here would lead to an absurd result—a person who fraudulently uses identifying

information could “escape criminal liability simply by stating or signing a name that

differs from the cardholder’s name.” Jones, 367 N.C. at 306, 758 S.E.2d at 350.

 Because the State presented substantial evidence of fraudulent intent, the trial

court would have denied Defendant’s motion to dismiss for insufficient evidence even

if presented with this argument. Accordingly, defense counsel did not commit error,

much less a serious error falling below the reasonableness standard set forth in

Strickland, by failing to assert this futile argument. Defendant’s argument that she

was denied effective assistance of counsel is meritless.

 - 13 -
 STATE V. CARTER

 Opinion of the Court

 B. Jury Instruction

 Defendant argues that the trial court committed reversible error by instructing

the jury on Defendant’s prior false or contradictory statements. Defendant contends

that the instruction impugned her character and on this basis requests a new trial.

 This Court reviews challenges to a trial court’s decisions regarding jury

instructions de novo. State v. Osorio, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149

(2009). Under a de novo review, this Court “considers the matter anew and freely

substitutes its judgment” for that of the lower court. State v. Williams, 362 N.C. 628,

632-33, 669 S.E.2d 290, 294 (2008).

 “The prime purpose of a court’s charge to the jury is the clarification of issues,

the elimination of extraneous matters, and a declaration and an application of the

law arising on the evidence.” State v. Cameron, 284 N.C. 165, 171, 200 S.E.2d 186,

191 (1973). Generally, a new trial is required if an error in jury instructions is

prejudicial. State v. Castaneda, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009).

Prejudice is established by a showing that “‘there is a reasonable possibility that, had

the error in question not been committed, a different result would have been reached

at the trial out of which the appeal arises.’” Id. (quoting N.C. Gen. Stat. § 15A-1443(a)

(2007)).

 “Our Supreme Court has held that false, contradictory, or conflicting

statements made by an accused concerning the commission of a crime may be

 - 14 -
 STATE V. CARTER

 Opinion of the Court

considered as a circumstance tending to reflect the mental processes of a person

possessed of a guilty conscience seeking to divert suspicion and to exculpate himself.”

State v. Scercy, 159 N.C. App. 344, 353, 583 S.E.2d 339, 344 (2003) (citations omitted).

“The probative force of such evidence is that it tends to show consciousness of guilt.”

Id. (citation omitted).

 A trial court may only use a jury instruction to this effect if the defendant’s

statement is relevant to proving that she committed the crime and indeed provides

“substantial probative force, tending to show consciousness of guilt.” State v. Walker,

332 N.C. 520, 537, 422 S.E.2d 716, 726 (1992). “The instruction is proper not only

where defendant’s own statements contradict each other but also where defendant’s

statements flatly contradict relevant evidence.” Id. at 537-38, 422 S.E.2d at 726. The

instruction is inappropriate if it fails to make clear to the jury that the falsehood does

not create a presumption of guilt. State v. Myers, 309 N.C. 78, 88, 305 S.E.2d 506,

512 (1983).

 In Defendant’s first statement to Blanton at the police station, she initially

denied the crime and blamed it on her ex-boyfriend. However, in her second, hand-

written statement, Defendant expressly stated:

 [T]o whom it may concern, I would like to admit to the
 fraudulent transactions . . . . These transactions were
 completed . . . by myself . . . . I obtained these numbers
 through an at-home job I was working. I have had these
 two numbers for about a year and never used. At the time
 of getting these, I had intentions of using them but never

 - 15 -
 STATE V. CARTER

 Opinion of the Court

 did because I rethought my actions. Then I was backed
 into a corner and didn’t think – I am very sorry for my
 actions and will do what is necessary to keep from being
 prosecuted.

Thus, the trial court did not err in determining that Defendant made two conflicting

statements. The trial court gave the following pattern jury instruction on false,

contradictory, or conflicting statements by the defendant:

 The State contends, and the defendant denies, that the
 defendant made false, contradictory, or conflicting
 statements. If you find that the defendant made such
 statements, they may be considered by you as a
 circumstance tending to reflect the mental process of a
 person possessed of a guilty conscience seeking to divert
 suspicion or exculpate the person, and you should consider
 that evidence, along with all other believable evidence in
 this case. However, if you find that the defendant made
 such statements, they do not create a presumption of guilt
 and such evidence standing alone is insufficient to
 establish guilt.

See N.C.P.I.—Crim. 105.21 (2017).3

 3 North Carolina Pattern Jury Instruction 105.21 contains the following note: NOTE WELL:
This instruction is ONLY proper where the defendant's statements and/or trial testimony is
contradictory to highly relevant facts proven at trial. HOWEVER, this instruction should NOT be used
if the statements are completely irrelevant and without substantial probative force in tending to show a
consciousness of guilt. EXTREME care should be used in first degree murder cases as such evidence
may not be considered as tending to show premeditation and deliberation. . . . EXTREME care should
also be taken to insure that the defendant's Fifth Amendment right to remain silent is not used against
the defendant. N.C.P.I.—Crim. 105.21 (2017) (emphasis in original). As explained in Discussion, Part
B, Defendant’s contradictory statements are highly relevant to proving Defendant’s “possess[ion] of a
guilty conscience seeking to divert suspicion and to exculpate [her]self.” Scercy, 159 N.C. App. at 353,
583 S.E.2d at 344. Thus, the jury instruction does not run afoul of the prohibitions or cautions
contained in this note.

 - 16 -
 STATE V. CARTER

 Opinion of the Court

 In this case, it was proper for the jury to consider the existence of Defendant’s

false, contradictory, and conflicting statements as “a circumstance tending to reflect

the mental processes of a person possessed of a guilty conscience seeking to divert

suspicion and to exculpate [her]self.” Scercy, 159 N.C. App. at 353, 583 S.E.2d at 344.

In her first statement to police, Defendant sought to exculpate herself by blaming her

ex-boyfriend. Not only was Defendant’s second statement contradictory to the first,

but it was relevant to proving that she committed the crime, and it indeed provided

“substantial probative force, tending to show consciousness of [her] guilt.” Walker,

332 N.C. at 537, 422 S.E.2d at 726. Use of this jury instruction on these facts is

consistent with the Supreme Court’s application of the instruction because

Defendant’s own statements contradicted each other and they flatly contradicted

evidence presented at trial. See id. at 537-38, 422 S.E.2d at 726. Moreover, the trial

court made clear in the jury instruction that the statements “d[id] not create a

presumption of guilt[,] and such evidence standing alone is insufficient to establish

guilt.” Myers, 309 N.C. at 88, 305 S.E.2d at 512. For these reasons, we conclude that

the instruction was proper.

 IV. Conclusion

 We conclude that the trial court did not err by denying Defendant’s motion to

dismiss for insufficient evidence of identity theft or by instructing the jury regarding

false or contradictory statements.

 - 17 -
 STATE V. CARTER

 Opinion of the Court

NO ERROR.

Judges BRYANT and YOUNG concur.

 - 18 -